## Jupiter Coal Mining Co. v. Caroline Mercer et al.

1.  ORDINARY CARE—*A Question of Fact for the Jury.*—Whether one is in the exercise of ordinary care for his own safety, at the time of his injury, is a question of fact for the jury.

2.  NEGLIGENCE—*What is Prima Facie Evidence.*—The violation of a statute enacted for the protection of persons is *prima facie* evidence of negligence, and if the violation is likewise the proximate cause of an injury, a person of the class intended to be protected by such statute is entitled to an action.

3.  PROXIMATE CAUSE—*A Question of Fact for the Jury.*—The question of a proximate cause is a question of fact for the jury, under proper instructions of the court.

4.  MINES AND MINERS—*Intentional Violation of the Law.*—An intentional violation of the " Miners' Act," or statutes of like character, from which injury results, is in law the equivalent of a willful injury.

Action in Case, for death from negligent act. Trial in the Circuit Court of Perry County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Verdict and judgment for plaintiff; error by defendant. Heard in this court at the February term, 1899. Affirmed. Opinion filed September 5, 1899.

B. W. POPE and S. H. REID, attorneys for plaintiff in error.

Before a person can recover on account of the neglect of a statutory duty, it must appear not only that the injury complained of was the result of such neglect, but it must also appear that the injured party was in the exercise of due care. A failure to observe these statutory requirements.

is *prima facie* negligence, but it does not excuse the injured party from the exercise of due care on his part. C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512; Pennsylvania Co. v. Lynch, 90 Ill. 333; St. L., A. & T. H. R. R. Co. v. Andres, 16 Brad. 292; Wabash R. R. Co. v. Henks, 91 Ill. 406.

If the injury is not occasioned by the willful violation or willful failure denounced by the statute, but by some other alleged negligence of the mine owner, and the person injured or killed fails to exercise ordinary care, then there would be no right of action. Catlett et al. v. Young, 143 Ill. 81.

C. E. Pope and W. P. Launtz, attorneys for defendants in error.

Where injury results from willful failure of a coal mining company to comply with the statutes, the company is liable, without reference to the care or prudence of the person injured. Fuel Co. v. Parsons, 38 Ill. App. 182; Catlett v. Young, 143 Ill. 81; Bartlett Coal Co. v. Roach, 68 Ill. 174; Litchfield Coal Co. v. Taylor, 81 Ill. 590.

Mr. Justice Bigelow delivered the opinion of the court.

This is an action on the case brought by the widow and children of William G. Mercer, deceased, against plaintiff in error, under Sections 4, 14 and 20 of Chapter 93 of Starr & Curtis' Annotated Statutes, 2d Ed., to recover damages for the death of deceased.

A clause of section 4 is as follows:

" All mines in which men are employed shall be examined every morning by a duly authorized agent of the proprietor to determine whether there are any dangerous accumulations of gas or lack of proper ventilation, or obstructions to roadways or any other dangerous conditions, and no person shall be allowed to enter the mine, until such examiner shall have reported all of the conditions safe for beginning work.

Such examiner shall make a daily record of the condition of the mine in a book kept for that purpose, which shall be accessible at all times for examination by the men employed in and about the mine and by the inspector."

Section 14 gives a right of action to the widow and children of any person whose death is occasioned by any willful violation of, or willful failure to comply with, any of the provisions of the law.

Section 20 makes it unlawful for any person to assume, or attempt to discharge, the duties of a mine manager at any mine equipped for shipping coal by rail or water, or the output of which may be twenty-five or more tons per day, unless he shall hold a certificate of qualification from the State Board of Mine Examiners.

The declaration contained three counts, the first of which alleged, in substance, that the mining company was operating a coal mine, with tracks, rooms, entries and switches; that the output of the mine was more than twenty-five tons per day; that the mine was equipped for shipping coal by rail; that no flagmen or trappers were employed by the company to warn drivers of dangerous obstructions on the tracks of the mine; that the company willfully failed to have in its employ, on the day of the accident, a mine manager holding a certificate of competency from the State Board of Mine Examiners; that the company willfully violated the aforesaid provisions of the law by allowing its servants to enter the mine under such circumstances; that William G. Mercer, being in the employ of the company, in the discharge of his duty, entered said mine, and drove certain cars, loaded with coal, over the tracks to transfer them to the bottom of the shaft, and while so driving, being in the exercise of ordinary care for his own safety, was crushed and mangled by a collision with another car, so that he died from the effects thereof; that by reason of the failure to observe said statutory duties the injury was inflicted.

The second count alleged the same facts in substance, and in addition thereto, alleged that the mining company failed to examine every morning, whether there was any obstruction on the tracks of the mine, and that it was the duty of the company to permit no person to enter the mine until an examination had been made and reported in a book kept for that purpose, in a place where the report might have been seen by the employes of the mine.

The third count alleges the negligence charged in the first two counts, and in addition avers that if the proper examination had been made, and if the duties alleged to have been violated had been discharged, Mercer would not have been killed.

No person saw the accident at the time of its occurrence and it is substantially conceded that the mining company had no licensed mine manager or pit boss as required by law. The verdict of the jury, that appellant willfully failed to employ a licensed mine manager or pit boss, was right. The medical testimony left no room for doubting that Mercer came to his death through a collision in some manner.

The evidence showed that there were nineteen cars loaded with coal standing on the track in the main entry and that Mercer drove two other cars loaded with coal from a cross-entry up to where these nineteen cars were standing, and it was at this place that he was found shortly after the injury by his fellow-workmen. He had been doing this kind of work for some time. It had been the custom at this mine, for nearly two years prior to the accident, to leave cars of coal mined during the night on the track in the main entry. The evidence shows that there was a driver's seat hung by means of iron hooks on the front end of the first car driven by Mercer, and this seat was still in its position, uninjured, after the accident. Under such circumstances, it is claimed by plaintiff in error that the evidence fails to show that he was injured by a collision between the cars, especially as he was found between the rail and the rib of coal, which were four feet distant from each other, and that the injury could not have happened as charged in the declaration, because he was found in front of his trip, while the seat was entirely uninjured.

Had plaintiff in error desired to establish this claimed impossibility, in order to have made the point clear, it ought to have preserved, in the bill of exceptions, the plat to which reference is twice made in the cross-examination of defendant in error's witnesses.

As this court understands the evidence, the main track is in the main entry of the mine. Switch tracks come from the cross-entries, and by means of frogs join on the main track. The end of the nineteen cars stood so close to the frog that a car coming from the switch track might collide with the end of the cars on the main track, or if there were no actual contact, a driver walking along by the side of his car would not have had sufficient room between the cars on the main track, and the moving cars on the switch track, and so would be squeezed between the sides of the moving cars and the standing cars, when the cars from the switch track were about to take the main track. If the accident happened in this way, the driver's seat would, of course, be left uninjured in its position. There is no evidence that at the time of the accident or at any other time, Mercer occupied the driver's seat. Plaintiff in error's argument merely shows that the injury may not have happened in a particular way; but since inferences may be drawn from the facts shown to have existed, that the injury could have happened in some other way, and still be the result of a collision, we are not justified in overturning the verdict of the jury, for that reason.

There is the testimony of a witness who first saw Mercer after the accident, that there was not sufficient space between the standing cars and the seat of the moving cars, for a man to pass through, and so the injury may have happened while Mercer was on the seat, the momentum of the moving car being sufficient to cause the injury without breaking the seat, Mercer's body being interposed.

The question remaining is, whether the company is liable, under the facts that the jury found or may have found, from what the evidence proves or tends to prove. It is true the evidence shows that Mercer knew these nineteen cars were on the main track, but the evidence is wholly wanting in establishing that Mercer knew the end of these nineteen cars was so close to the switch track that he could not with safety walk by the side of his car as he approached the main track from the cross-entry.

The company claims that Mercer's place was on the driver's seat, and that if he had been there he would not have been injured; but the question of Mercer's care for his own safety at the time of the injury was fully and accurately submitted to the jury, by both parties, in the instructions given, and we are not prepared to say in opposition to their verdict that a driver in a coal mine is negligent in the discharge of his duties, merely because he does not at all times hold to his seat.

We are satisfied that Mercer was killed by a collision of the cars, and whether he was in the exercise of ordinary care for his own safety at the time of the injury was a question of fact for the jury.

There only remains to consider the question of the alleged negligence of plaintiff in error in not having a licensed pit boss, as required by the statute, and whether the company's failure in that regard was the proximate cause of the injury. These were also questions of fact for the jury to find.

The first instruction given for defendant in error should have been refused; but in view of the very full and accurate instructions given for plaintiff in error, fifteen in number, we are unable to say that this instruction misled the jury.

The violation of a statute established for the protection of persons is *prima facie* evidence of negligence, and if the violation is likewise the proximate cause of the injury, a person of the class intended to be protected by the regulation is entitled to an action.   1 Shearman and Redfield's Negligence, 4th Ed., Sec. 13.

And the question of proximate cause is a question of fact for the jury, under proper instructions.   Ib., Section 55.

All the instructions given for the plaintiff in error urged upon the jury its non-liability, unless it was shown that the failure to obey the statute was both the cause of the injury and a willful neglect of duty.   Once it is established that the proximate cause of the injury is the failure of the defendant to obey the statute, the policy of the police regulations contained in the miners' act does not require that either

court or jury should indulge in refined distinctions as to "assumed risks" or contributory negligence on the part of the persons injured. Fuel Co. v. Parsons, 38 Ill App. 182; Catlett v. Young, 143 Ill. 74; Bartlett Coal Co. v. Roach, 68 Ill. 174; Litchfield Coal Co. v. Taylor, 81 Ill. 590.

To knowingly violate a statute of this character, from which an injury results, is in law, if not in morals, the precise equivalent of willful injury. Catlett v. Young, *supra.*

Had a licensed pit boss been employed, a proper discharge by him of his duties might have prevented the death of deceased, at least we are unable to say that it would not. The policy of this class of legislation is such, it seems to us, that if the coal company continues to violate the law knowingly, and, contemporaneously with the continued negligence of the defendant, an injury happens to a person of the class sought to be protected by the provisions of the statute, and a jury finds the violation of the law to have been the cause of the injury, then, before this court ought to set aside the verdict, there ought to be an utter absence of evidence to show that the statutory negligence was the cause of the injury. Nearly every instruction submitted by the plaintiff in error declared the defendant not liable if Mercer's own acts or omissions contributed to the injury, and the question of assumed risks was likewise submitted, predicated upon the knowledge that Mercer had of the dangers and hazards that surrounded him. The jury, rightfully, we think, refused to find that he knew of these dangers, because his knowledge that there were nineteen cars on the track was no knowledge that they would be so close to the switch as to interfere with him in the discharge of his duties. The evidence, while it shows that he was "boss driver," fails to show that, as such driver, it was his duty to inspect the precise location of the cars it had been a custom, for two years prior to the accident, to leave on the main track; but it would seem from the evidence that such duties are generally intrusted to flagmen and trappers. To say that Mercer, by continuing in the employ of the mining company after he knew of its negligence in not employing a licensed mine

manager, thereby assumed all risks, is, under the decisions above referred to, to utterly disregard the positive requirements of the statute, unless it had likewise been shown that he also knew the cars were on the main track and were so close to the frog that in making his trip he could not avoid collision.

Not only the known fact of the non-compliance with the statute in failing to employ a licensed pit boss, but also the known existence of dangers that such a pit boss, in the due discharge of his duties, might have provided for the avoidance of, must be shown to have been present to the mind of the miner when he entered upon the discharge of a duty that brought him into contact with such dangers, before the miner's right to compensation will be barred. Such was the case of the W. St. L. & P. Ry. Co. v. Thompson, 15 Ill. App. 117, where the plaintiff knew that the tumbling-rod was revolving in an exposed condition, contrary to the statute, but nevertheless undertook to execute a duty in proximity to this rod, and that, too, without stopping the machine, as he might have done, he having the entire charge and control of it. The very full and accurate instructions given for the plaintiff in error cured the defect, if any, in the instructions of the defendant in error, and they likewise clearly presented all theories of defense possible in the case. The questions thereafter left were purely questions of fact, and the jury could not have misunderstood the case or the questions for them to determine. The verdict, which was for $1,350, is not complained of as excessive, and the judgment entered thereon is affirmed.