## Chicago City Railway Company v. Patrick H. O'Donnell, Administrator, etc.

### Gen. No. 11,160.

1. INCOMPETENT ANSWER—*how impropriety of, should be questioned.* Where a question is proper but the answer is improper, a motion to strike out the answer is essential to raise the question of the impropriety of such answer.

2. FENDER ORDINANCE—*effect of violation of.* Where a traction company has violated a municipal ordinance providing for the equipment of its cars with fenders, such violation, in an action for personal injuries, is *prima facie* evidence of negligence.

3. DIRECTORY INSTRUCTION—*what should contain.* Where an instruction directs the jury to find a particular verdict if they find certain facts, it must embrace all the facts and conditions essential to such a verdict.

4. MINOR—*degree of care to be exercised toward.* A traction company is not required to exercise toward an infant, not a passenger, who happens to be upon a crowded street crossing, a greater degree of care than it is required to exercise toward a man of full age upon an unfrequented street.

5. ORDINARY CARE—*what constitutes.* What is ordinary care upon the part of those in charge of a particular car, towards persons upon a

street, not passengers, depends upon the age of such persons and upon the place, conditions and circumstances, and is a question of fact for the jury.

6. Written motion for new trial—*when, operates as waiver of error.* When a motion in writing, for a new trial, specifying the grounds of the motion, is filed, the moving party is, in the Appellate Court, confined to the reasons specified in his motion and will be held to have waived all other points.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. Jonas Hutchinson, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1903. Affirmed. Opinion filed June 3, 1904.

Statement by the Court. Thomas Burke, a boy six years old, was run over and killed April 12, 1899, by a cable car of appellant, and his administrator recovered against appellant a judgment for $2,000 for wrongfully causing his death. The declaration charged in certain counts, negligence in running and operating the car, and in one count set out an ordinance of the city of Chicago, which required all passenger cars on street railroads, after September 1, 1898, "to be equipped and provided with fenders of steel of the basket kind, which shall be substantially attached to the front end thereof, so as to guard passengers and pedestrians from being injured under the wheel, in case of collision or other accident," and averred that the car which ran over and killed the deceased was not equipped in accordance with the ordinance, and that by reason of the negligence of the defendant in failing to so equip its cars the deceased was run over and killed. The grip-car in question was provided with a fender but not with the special kind of fender specified in the ordinance.

William J. Hynes and John B. Brady, for appellant; Nathaniel C. Sears and Mason B. Starring, of counsel.

McGoorty & Pollock, for appellee.

Mr. Justice Baker delivered the opinion of the court.

At the trial the plaintiff asked witness Rooney to describe the operation of a basket fender, how it is put on

and how it is operated. The defendant objected to the question, the objection was overruled and exception taken. The witness then stated that the fender was attached to the front of the car, and so arranged that in case of emergency the gripman could press his foot on a plunger and thereby drop the fender upon the rail. Upon his cross-examination he stated that the basket fender operated by a plunger, was first used several months after the accident. There was no motion to strike out the testimony of the witness as to a basket fender operated by a plunger. Later in the trial the defendant called as a witness Davis, a car inspector of the defendant, who testified in chief that the defendant first put on the basket fenders September 2, 1899; that the fenders so put on worked with a plunger that dropped the fender upon the rail, and that the advantage of a basket fender with a plunger was, that in case of danger, by the gripman stepping on the plunger, the fender was dropped down close to the rail so that a person would not get under it. It is now insisted that the court erred in overruling the objection of defendant to the question put to Rooney, because no fender operated by a plunger as described by him had at the time of the accident been invented or put in use. This contention cannot be sustained, first, because the question was not improper. The answer, if improper, was so because the witness described, not a fender known, or in use at the time of, or before the accident, but one invented and put in use after that time, and there was no motion to strike out the testimony after that appeared. Second, because defendant's witness Davis described the construction and operation of a basket fender operated by a plunger, and its advantages, more fully and in greater detail than did plaintiff's witness Rooney.

It is contended that the court erred in giving to the jury for plaintiff this instruction: "The court instructs you that if you believe from the evidence that there was not such a fender on the car in question as required by the ordinance of the city of Chicago, and if you further believe from the evidence that running said car without such fender was

negligence on the part of the defendant under all the facts
and circumstances shown in evidence in the case, and that
the absence of such fender was the proximate cause of
the death of deceased, then you should find the defendant
guilty," because there was no evidence to warrant the jury
in finding that the failure of the defendant to equip its car
with the fender specified in the ordinance was negligence;
or if there was evidence from which the jury might find that
such failure constituted and was negligence there was no
evidence to warrant them in finding that such negligence
was a proximate cause of the death of plaintiff's intestate.
The ordinance was passed by the city council under the
power conferred upon that body by the statute to regulate
the use of the streets of the city, and was passed for the
protection of persons. It is conceded that the defendant
violated the ordinance. Such violation was *prima facie*
evidence of negligence, evidence from which the jury might
find the fact of negligence. Jupiter Coal Mining Co. v.
Mercer, 84 Ill. App. 96; Shearman & Redfield on Negligence,
5th ed., sec. 13.

There is no direct or positive evidence that the failure of
defendant to equip its cars with the fender specified in the
ordinance, caused or contributed to the death of plaintiff's
intestate, and the question is, whether from the facts and
circumstances in evidence, the jury were warranted in
drawing the inference that such failure caused or contrib-
uted to his death. The deceased started to run diagonally
across the track, in front of the car, was struck by the car,
thrown to the ground, and when the car was stopped he
was between the rails, about midway between the front
and rear ends of the car, and in front of the grip lever.
There was upon the car a V-shaped fender made of wood
and rubber. This fender was placed, not *on* the front end
of the car, where the ordinance required the steel basket
fender to be placed, but *under* the front end of the car.
The extreme forward point of the fender was fourteen
inches behind the bumper and the ends were immediately
in front of the fore wheels of the car. The V-shaped fen-

der was manifestly not intended to prevent a person who should be struck by a car from passing under the front end of the car, for the fender could not touch him until the front end of the car had passed over him.    At most it could only be of use in preventing him from passing under the wheel or farther back under the car than the fender. The object of placing the steel basket fender on the front end of the car was to throw a person against whom the car might run to one side, or to take him up upon the fender, and thereby prevent him from passing under the car at all. The fender that was on the car of defendant not only did not prevent the deceased from passing under the car, but permitted him to pass either over or under the fender, for he was found behind the fender.    It is said that the plaintiff offered no testimony to show that the steel basket fender required by the ordinance was more efficient to prevent such an accident than the fender which was upon the car.    Proof of the failure to use the fender required by the ordinance made a *prima facie* case of negligence of the defendant.    If the defendant sought to excuse the failure to comply with the ordinance by showing that there was on the car a fender, though not the fender required by the ordinance, it was for the defendant to show that such fender was as good or efficient as the fender required by the ordinance and not for the plaintiff to show that it was not so good nor so efficient.    In our opinion the evidence was sufficient to require the court to submit to the jury, both the question whether the failure of defendant to use the fender required by the ordinance amounted to and was negligence, and also the question whether such negligence if found by the jury, caused or contributed to the death of plaintiff's intestate.    And we are also of the opinion that the jury were warranted from the evidence in finding against the defendant, both the fact of negligence, and that such negligence caused or at least contributed to the death of plaintiff's intestate.

It is assigned for error that the court refused to give for the defendant the following instruction:    "The court in-

structs the jury, as a matter of law, that the defendant was
not required to exercise toward the plaintiff's intestate the
highest degree of care, but the said defendant was only re-
quired to exercise toward the said plaintiff's intestate ordi-
nary care at the time and place of the accident in question,
and ordinary care is such as a person of ordinary prudence
would exercise under the same or like circumstances. If
the jury believe from the evidence that the defendant's
servants exercised, at the time and place in question, ordi-
nary care to avoid injuring the plaintiff's intestate, but
that nevertheless the deceased was injured, then they
should find the defendant not guilty;" and also instruction
11, of substantially the same purport and effect. No ob-
jection is perceived to these refused instructions, so far as
they relate to and state the care the servants of the de-
fendant were bound to exercise in running and operating
its cars, but each instruction concluded with the direction
to the jury, in case they found that such care had been ex-
ercised, to find the defendant not guilty. The declaration
charged and the evidence tended to prove not only negli-
gence in the operation of defendant's car, but also negli-
gence in failing to equip its car with the fender required
by the ordinance. An instruction that directs a particular
verdict if the jury find certain facts, must embrace all the
facts and conditions essential to such a verdict. Illinois
Iron Co. v. Weber, 196 Ill. 526.

It is further contended that the court erred in giving
plaintiff's third instruction, by which the jury were in-
structed " that the law demands a *greater degree* of care in
running a cable car over a public street crossing much fre-
quented by children than is demanded at other places," and
in modifying instructions 16 and 17 requested by defend-
ant, by striking out the words " by the exercise of ordinary
care" where used in stating the degree of care the serv-
ants of defendant in charge of its cars were required to
exercise on the occasion in question to avoid injuring
plaintiff's intestate, and inserting in their stead the words
"high degree of care." The defendant was bound to use

ordinary care and only ordinary care to avoid injuring the deceased, for he was not a passenger, but a pedestrian passing along or across the street on which defendant's cars ran. It owed him, though an infant, and upon a crowded street crossing, no greater degree of care than it owed to a man of full age upon an unfrequented street. What is ordinary care on the part of those in charge of a street car towards persons upon the street, not passengers, depends upon the age of such persons, upon place, condition and circumstances, and is a question of fact for the jury. Acts and conduct on the part of those in charge of a street car, consistent with ordinary care towards a man of full age, may amount to and be negligence towards an infant.

Appellee contends that the appellant cannot here question the action of the Superior Court in giving said third instruction or in refusing to give instructions 16 and 17 as requested, or in giving them as modified, and this contention is based upon the motion, in writing, of defendant for a new trial. The trial court gave for the plaintiff instructions numbered 1 to 6, refused to give for defendant instructions numbered 7 to 15 and modified defendant's instructions 16, 17 and 18. The giving of the third instruction for the plaintiff, the refusal to give defendant's instructions 7 to 15, the refusal to give defendant's instructions 16, 17 and 18 as asked, the modification of said instructions 16, 17 and 18 and giving them as modified, were duly excepted to by the defendant. Among the grounds for a new trial set forth in defendant's motion in writing therefor are the following:

"16. The court erred in giving each of the instructions given by the court on behalf of the plaintiff, except the third and sixth instructions.

" 17. The court erred in refusing to give each of the instructions asked by the defendant and refused by the court.

"18. The court erred in improperly modifying each of the instructions asked on behalf of the defendant and modified by the court and giving them, and each of them, to the jury as so modified, except as to instructions 16 and 17, wherein they are in legal effect the same as plaintiff's instruction 3, on the degree of care at street crossings."

Among the errors assigned in this court are the following :

"16.  The court erred in giving on behalf of the plaintiff instructions numbers 2. 4 and 5.

"17.  The court erred in refusing to give each of the instructions asked by the defendant and refused by the court.

" 18.  The court erred in improperly modifying instruction number 18 asked on behalf of the defendant, modified by the court and giving it to the jury as so modified.

"22.  The court erred in overruling the defendant's motion for a new trial."

When a motion in writing, for a new trial, specifying the grounds of the motion, is filed, the moving party is, in the Appellate Court, confined to the reasons specified in his motion and will be held to have waived all other points.  O., O. & F. V. R. R. Co. v. McMath, 91 Ill. 104; Gottschalk v. Jarmuth, 69 Ill. App. 622.  The only ground for a new trial, relating to the giving of the instruction given for plaintiff, set out in the motion for new trial, is number 16 above set forth. When the defendant in the motion for a new trial assigned as a ground therefor that the trial court "erred in giving each of the instructions given for the plaintiff except the third and sixth instructions," it waived all right of objection to the giving of the third instruction.  The only ground for a new trial set out in the written motion of defendant, based upon the refusal to give instructions 16 and 17 as asked, and giving them as modified, is number 18 above set forth, which expressly excepts from the motion the modification of "instructions 16 and 17, wherein they are in legal effect the same as. plaintiff's instruction 3, on the degree of care at street crossings."  The only complaint made of the modification of said instructions is in relation to "the degree of care at street crossings," and. the right to make such complaint was waived by the terms of the motion for a new trial.  It is also to be noticed that it is not assigned for error, upon the record in this court, that the trial court erred, either in giving plaintiff's third instruction, or in modifying defendant's instructions 16 and

17, while it is assigned for error that the court erred "in giving in behalf of plaintiff instructions numbered 2, 4 and 5," and also erred in "modifying instruction numbered 18 asked in behalf of the defendant and giving it to the jury as modified." In the motion for a new trial the defendant set out as a ground therefor "that the court erred in refusing to give each of the instructions asked by the defendant and refused to be given;" there is an assignment of error in substantially the same words, and appellant contends that upon the ground for a new trial and assignment of error above mentioned this court may review the action of the Superior Court in refusing to give instructions 16 and 17 as asked. There would be force in this contention if in the Superior Court no instruction asked by defendant had been refused, and only instructions 16 and 17 had been modified, or even if the only ground for a new trial relating to instructions, set out in defendant's written motion, had been that "the court erred in refusing to give each of the instructions asked by defendant and refused to be given," for it may be said that the court did refuse to give instructions 16 and 17 as asked and the defendant excepted to such refusal. But the court refused to give for defendant instructions 7 to 15, and modified instructions 16, 17 and 18. The defendant in its motion in writing set out twenty-two grounds for a new trial. One was that the "court erred in refusing to give the instructions asked by the defendant and refused by the court;" another was No. 18, above set forth, relating to the modification of the instructions asked by the defendant and modified by the court. In this court the appellant has assigned twenty-four errors. One is based on the refusal to give the instructions asked by the defendant and refused by the court, another assigns as error that the court improperly modified defendant's instruction 18 and gave it to the jury as modified. In Hintz v. Graupner, 138 Ill. 158, the court refused to give any of the instructions asked by either party and gave an instruction of its own, divided into sections. The only ground for a new trial relating to instructions set out in defendant's motion

therefor, was that the trial court refused "proper instructions asked for by the defendant." It was held that the defendant could not, on appeal, question the correctness of any section of the instructions given by the court because he had not stated in-his motion for a new trial as a ground therefor that the court erred in giving the instruction which it did give. In our opinion upon this record the ground for a new trial and the assignment of error "that the court erred in refusing to give each of the instructions asked by the defendant and refused by the court," must be held to refer to, and challenge only the action of the trial court in refusing to give defendant's instructions 7 to 15, and cannot be held to extend to or challenge the action of the court in relation to defendant's instructions 16, 17 and 18.

We find no material errors in the admission or exclusion of evidence and the contention that the damages are excessive cannot be sustained.

The judgment of the Superior Court will be affirmed.

*Affirmed.*