Jacob J. Goodhart, Administrator, Appellant, v. Chicago City Railway Company, Appellee.

Gen. No. 16,066.

1. NEGLIGENCE—*when ordinance competent. Held*, that the averment in the declaration that the plaintiff's intestate "was undertaking to enter a vacant seat upon the east side of said grip car," taken in connection with the other averments of said declaration, was sufficient to warrant the introduction thereunder of an ordinance requiring a street railway corporation to place a wire guard or other suitable device to prevent passengers from "entering" cars from the side of such car which is nearest to any adjoining street railway track.

2. NEGLIGENCE—*how effect of violation of ordinance determined.* Whether or not the failure of a defendant to comply with the requirements of an ordinance was the proximate cause of an injury, is a question of fact for the jury.

3. INSTRUCTIONS—*when improperly withdraws question of negligence from jury.* An instruction which withdraws from the jury the

question of the negligence of the defendant as distinguished from the negligence of its employes is erroneous.

Action in case. Appeal from the Circuit Court of Cook county; the HON. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed February 13, 1912. Rehearing denied February 29, 1912.

KRAUS, ALSCHULER & HOLDEN, for appellant.

JAMES G. CONDON, for appellee; IRVIN I. LIVINGSTON, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an action to recover damages for personal injuries, resulting in the death of Max Jesselson, brought by Jacob J. Goodhart, administrator of the estate of said Jesselson, deceased, appellant, against the Chicago City Railway Company, appellee, defendant below, in the Circuit Court of Cook county. The jury returned a verdict finding the defendant not guilty, judgment was entered on the verdict and from that judgment this appeal is prosecuted.

On November 18, 1905, appellee was operating a street railway upon Wabash avenue in the city of Chicago. There were two parallel tracks, running north and south, whose inner rails were about five feet apart. At this time, and for many years prior thereto, the cars were operated by means of a cable running in a conduit underneath the surface of the ground. The cable was taken hold of and released by means of a mechanism in the front car, called the grip car. The grip car was an open car (to which was coupled one or more closed passenger cars), and had an enclosed alley extending through its length, except for a space at each end of the car, where there was a passageway across the floor of the car. In this enclosed alleyway the gripman stood, and, by means of levers which could

be moved forward or backward, operated the car. On each side of this alleyway, and extending from it to the outside of the car, were six seats, four of which— two in front and two in the rear—were each intended to accommodate two passengers, the remaining two middle seats being intended to accommodate but one passenger. Upon each side of the grip car, running along its length, was a footboard, from eight to ten inches wide, which was the only means provided for entering or leaving said car. Cars going north on Wabash avenue ran on the east track, those going south on the west track. Persons boarding a south bound grip car from the west side or outside, and de- siring to enter a seat on the east side of the car, were obliged, owing to the construction of the car, to cross over the floor of said car at either front or rear, and, descending to said footboard, pass along upon the same to the seat desired. At each seat there was an upright post running from the floor to the roof of the car. The ends of each seat along the side of the car extended out over the footboard a distance of four to six inches, so that in passing along said footboard it was necessary to swing the body out past the project- ing ends of the seats. Several months before the acci- dent in question, which occurred on November 18, 1905, appellee constructed an electric overhead trolley over these Wabash avenue tracks and, in addition to said grip and closed passenger cars, operated on the tracks new electric cars, which were considerably larger and wider than said grip and closed passenger cars. The distance between the extreme parts of a grip car and one of these new electric cars, when passing each other, was somewhere between fifteen and twenty-three inches. The distance was such that, as testified by one of appellee's witnesses, a person could, while standing on the east footboard of a south-bound grip car and pushing his body closely against the grip car, walk

along said footboard, by taking hold of one of the posts and reaching out for the next one, without being hit by a passing new electric car, but that it was a "pretty risky thing" to do, because there was not "a terrible lot of space there."

About eight o'clock in the evening of November 18, 1905, the deceased, carrying a bundle, boarded the west side of a south-bound grip car on Wabash avenue at the intersection of Van Buren street, walked in the passageway across the front of the grip car to its east side, and stepped down on the east footboard of said car with the evident intention of entering one of the seats on that side of said car. The witnesses differ as to whether he had already seated himself on the east side of the car and was attempting to change his seat, or was seeking a seat in the first instance; but, however this may have been, while he was moving along on the east footboard, attempting to reach a seat, and while he was facing toward the rear of the grip car, with his back to the south and east, one of the new electric cars coming from the south struck him and brushed him off said footboard down between the cars, and one of his feet was severed from his body, and he subsequently died as a result of the accident.

At the time of the accident, there was in force an ordinance of the City of Chicago, as follows:

"1965. WIRE GUARDS ON INNER SIDE OF CAR— PENALTY. Every person or corporation owning, operating or controlling any street railway within the City shall place or cause to be placed on all open street railway cars, either motor, grip, electric or passenger cars, a wire guard or other suitable device to prevent passengers from entering or leaving cars from the side of such car which is nearest to any street railway track adjoining the track upon which such car is being operated. Every such person or corporation shall also place a wire guard or other suitable device on the outside of all such cars to protect passengers from falling under the wheels. Any

person or corporation violating any of the provisions of this section shall be fined not less than fifty nor more than two hundred dollars for each offense, and each day on which any such person or corporation operates a street railway car in violation of the provisions of this section shall be deemed a separate and distinct offense.''

The declaration consisted of seven counts, to which the defendant pleaded the general issue. During the trial an amended fourth count was filed, and it was ordered that the plea of general issue, theretofore filed by the defendant, stand as a plea to said amended count. The amended count set out the said ordinance *in haec verba,* and averred in substance that the defendant, not observing its duty under said ordinance, carelessly and negligently failed to comply therewith, in that said grip car had no wire guard or other device to prevent passengers from entering or leaving said car from the side which was nearest to the adjoining track, and that while plaintiff's intestate, who was then in the exercise of ordinary care for his own safety, was undertaking to enter *"a vacant seat"* upon the east side of said grip car, he was, by reason of the said negligence of the defendant, permitted and caused to be placed in a position upon the car, wherein he was struck by another passing car, and was so severely injured that he died.

During the trial, plaintiff offered in evidence the said ordinance, but to its introduction defendant objected on the ground that under the pleadings and the evidence it did not appear that any non-observance of such ordinance in any manner contributed to the accident, and the ordinance by its terms had no application to the deceased or to the situation in which he was at and before the time of the accident. No other objections to its introduction were made. The trial court, in the presence of the jury, sustained the objections, and refused to admit the ordinance in evi-

dence. At the close of plaintiff's evidence, on motion of defendant, the court instructed the jury to disregard the amended fourth count of plaintiff's declaration, and the trial proceeded on the remaining counts.

Various errors are urged by appellant as reasons why the judgment should be reversed and the cause remanded. It is claimed that the trial court erred, (a) in instructing the jury to disregard the amended fourth count of the declaration and in refusing to admit in evidence the said ordinance, and (b) in the giving of certain instructions offered by the defendant.

After a careful review of the record and the briefs of opposing counsel, we have reached the conclusion that the trial court erred in instructing the jury to disregard said amended count and in refusing to admit said ordinance in evidence. The averment in the count that plaintiff's intestate "was undertaking to enter *a vacant seat* upon the east side of said grip car," taken in connection with the other averments of said count, is sufficient, we think, to warrant the introduction thereunder of an ordinance requiring a street railway corporation to place a wire guard or other suitable device to prevent passengers from "entering" cars from the side of such car which is nearest to any adjoining street railway track. Entering a vacant seat upon that side of the car was, it seems to us, entering the car; and the manifest purpose of the ordinance was to prevent accidents similar to the one in question.

We think the ordinance should have been admitted in evidence, because no question was raised but that said ordinance was a valid and reasonable enactment, and the evidence showed a failure on the part of the defendant to comply therewith. Furthermore, the deceased was undertaking to enter a seat on the side of

the car required by said ordinance to be guarded in the manner prescribed, and he was, we think, within the class of persons which the ordinance was designed to protect, and, in all probability, had the provisions of the ordinance been complied with, the accident would not have occurred.  But whether or not the failure of appellee to comply with the requirements of the ordinance was the proximate cause of the injury was a question of fact for the jury.  Dallemand v. Saalfeldt, 175 Ill. 310; North Chicago St. Ry. Co. v. Dudgeon, 184 Ill. 477; True & True Company v. Woda, 201 Ill. 315; Hayes v. Michigan Central R. R. Co., 111 U. S. 228; Heiting v. Chicago, R. I. & P. Ry. Co., 252 Ill. 466.

Among the instructions given by the court at the request of the defendant was the following instruction:

"The court instructs you that the relation of passenger and carrier does not make the carrier an insurer of the absolute safety of the passenger.  The carrier does not guarantee that it will protect passengers against remote, unusual and extraordinary perils not to be foreseen by the exercise of the highest degree of care consistent with the practical operation of the carrier's railroad.  The defendant, the Chicago City Railway Company, was not required to exercise a degree of care which was not practicable in the operation of its business, and if you believe from the evidence that the injury, resulting in the death of the plaintiff's intestate, could only have been prevented by the exercise of a degree of care and caution on the part of the street railroad *employees* not reasonably practicable in the operation of the defendant Company's street railroad, then the jury should find the defendant, the Chicago City Railway Company, not guilty."

We think the giving of this instruction was erroneous in that it withdrew from the consideration of the jury any of the negligence of the defendant rail-

way company as distinguished from that of its *employees* in operating the cars.

In Chicago City Ry. Co. v. O'Donnell, 114 Ill. App. 359, this court said (p. 363):

"It is assigned for error that the court refused to give for the defendant the following instruction: 'The court instructs the jury, as a matter of law, that the defendant was not required to exercise toward the plaintiff's intestate the highest degree of care, but the said defendant was only required to exercise toward the said plaintiff's intestate ordinary care at the time and place of the accident in question, and ordinary care is such as a person of ordinary prudence would exercise under the same or like circumstances. If the jury believe from the evidence that the defendant's *servants* exercised, at the time and place in question, ordinary care to avoid injuring the plaintiff's intestate, but that nevertheless the deceased was injured, then they should find the defendant not guilty;' and also instruction 11, of substantially the same purport and effect. No objection is perceived to these refused instructions, so far as they relate to and state the care the *servants* of the defendant were bound to exercise in running and operating its cars, but each instruction concluded with the direction to the jury, in case they found that such care had been exercised, to find the defendant not guilty. The declaration charged in the *operation* of defendant's car, but also negligence *in failing to equip its car with the fender required by the ordinance.* And the evidence tended to prove not only negligence An instruction that directs a particular verdict if the jury find certain facts, must embrace all the facts and conditions essential to such a verdict."

Because of the views above expressed, it will not be necessary for us to discuss the other points raised by appellant.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*