## HIRAM B. CATLETT *et al.*

*v.*

## LAURA YOUNG.

*Filed at Springfield November 2, 1892.*

1. NEGLIGENCE—MINING LAW—*liability for failure to fence coal shaft.* The law makes it the duty of every operator and owner of a coal mine to securely fence the top of the shaft by gates properly protecting the shaft and the entry thereto, and if he fails willfully to so fence the same, and by reason of such failure a person employed about the mine is killed, the owner or operator will be liable to the widow of the person so killed for damages, not exceeding $5000, even though the person so killed may be chargeable with contributory negligence.

2. SAME — *compliance with the statute.* But if the statute has been complied with by the operator or owner of the mine, or the injury is not occasioned by the willful violation or willful failure denounced by the statute, but by some other alleged negligence of the mine owner, and the person killed or injured has failed to exercise ordinary care for his safety, there will be no right of action.

3. The statute requires that the top of the shaft in a coal mine shall be securely fenced by gates properly covering and protecting the shaft and the entrance thereto. Providing a flat car, so that it can be placed over the shaft when not otherwise used, making its safety as to being covered depend upon the exercise of due care in operating such car and a movable block acting upon a pivot, is not a compliance with the statute.

4. SAME — *fencing coal shaft—object of the statute.* The very object to be attained by the statute requiring the shaft in a coal mine and the

entrance thereto to be fenced, is to prevent injuries to persons employed in a coal mine, so that negligence on their part in the manner of doing their work shall not prove fatal to a recovery for an injury suffered by them.

5. SAME—*instruction as to willful violation of the statute.* In an action by the widow of a miner killed by falling into a shaft not properly fenced, against the owner of a coal mine, it was held no error to refuse to instruct the jury that if they believed, from the evidence, that the defendant, in good faith, for the protection of the entrance, boarded and fenced it, and arranged a car, and for its operation, to act as a gate or covering for the shaft, and that such provision was sufficient to protect one in the exercise of the care that a person of ordinary prudence would, under the circumstances, exercise, from falling into the shaft, then the act of the defendants was not willful and the plaintiff could not recover.

6. In an action against the owner and operator of a coal mine to recover damages for the death of the plaintiff's intestate, caused by a failure to properly fence a shaft and the entrance thereto, it is not error to instruct the jury that by a willful violation of the law is meant a violation of its provisions, knowingly and willfully committed.

7. SAME—*master and servant.* Where a miner, after quitting his employment and being paid off, again went to work at the mine, and was killed by falling into a shaft not properly fenced by gates, it was *held,* in an action by the widow of the deceased, that it was not error to instruct the jury that if he so went to work with knowledge of and without objection on the part of the superintendent of the mine who was in charge of the work, then the relation of employer and employe existed as between the owners of the mine and the deceased; nor was it error to refuse to instruct the jury that if he went to work without the knowledge of the defendants, then the defendants were not liable. The knowledge and implied consent of the superintendent in charge of the work was the knowledge and consent of the defendants.

8. STATUTES CONSTRUED—*re-enactment.* Where the legislature re-enacts a section of a law in almost the same words as the original, which has been judicially construed, it will be presumed that such section was re-enacted in view of such construction.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. EDWARD P. VAIL, Judge, presiding.

Mr. W. R. Lawrence, for the appellant:

The first of plaintiff's instructions is too broad. It fixes the liability of the defendant regardless of the conduct of the person injured. *Railroad Co.* v. *Seirer,* 60 Ill. 300.

The principle is well settled that though a defendant has been guilty of culpable negligence in producing an injury, yet if his act was not wanton, and if the person injured, by his own misconduct or want of ordinary care, essentially contributed to produce the result, he can not recover. *Birge* v. *Gardner,* 19 Conn. 507.

As the statute does not prescribe the kind of gate that shall cover the shaft, it is a matter of proof as to what constitutes a secure covering, and the jury should be clearly informed as to what constitutes a willful or a wanton violation of the law. If the operator of a mine, in good faith, attempts to protect his workmen, but innocently fails to do so, it can not be said that his failure is willful.

It is a common law duty of the owner or operator of dangerous machinery to keep the appliances in such condition as to be reasonably and adequately safe for use by the employe in the course of the employment, to the best of his judgment, information and belief. Wharton on Negligence, sec. 211; *Priestly* v. *Fowler,* 3 M. & W. 1; *Coal Co.* v. *Reid,* 3 Macy, H. L. 266.

Where the negligence of the plaintiff contributes directly to the injury there can be no recovery. *Railroad Co.* v. *Seirer,* 60 Ill. 296; *Railroad Co.* v. *Todd,* 36 id. 409; *Railroad Co.* v. *Middlesworth,* 46 id. 494; *Jones* v. *Railroad Co.* 82 Ky. 610; *Railway Co.* v. *Bray,* 57 Ill. 514.

The willful failure meant by the statute is an intentional failure to perform a manifest duty, in reckless disregard of the consequences affecting the life or property of another. Beach on Contrib. Neg. 67; *Railroad Co.* v. *Hetherington,* 83 Ill. 510; *Railroad Co.* v. *Galbreath,* 63 id. 436; *Railroad Co.* v. *Johnson,* 103 id. 522.

The relation of employer and employe did not exist at the time of the accident.

Messrs. BLACKBURN & REARICK, and Mr. J. B. MANN, for the appellee:

The statute makes it the duty of the mine owner to securely fence the top of the shaft by gates properly protecting and covering the shaft. A willful failure to do so renders him liable for injuries or death caused thereby. It is not necessary that the failure should be malicious, but merely that it should occur knowingly. When the shaft is not covered the owner is acting in violation of a positive command of the law, is a law breaker, and can not be heard to complain that the victim of his illegal act did not use proper means to protect himself.

We do not contend that where gates properly covering the shaft have been provided, a failure to have them closed constitutes a willful act, under the statute, so as to cut off the defense of contributory negligence. *Railroad Co.* v. *Donahue*, 75 Ill. 106; *Coal Co.* v. *Taylor*, 81 id. 590; *Coal Mining Co.* v. *Roach*, 68 id. 174.

As to the deceased being in the employ of appellant at the time of the accident, it is sufficient to say that he was there with the knowledge and consent of appellant's foreman.

Mr. JUSTICE BAKER delivered the opinion of the Court:

Laura Young, appellee, prosecuted this action on the case, against Hiram B. Catlett and Herald Catlett, appellants, to recover damages for injuries sustained by her by reason of the death of her husband, caused by his falling down the shaft of a coal mine, the top and entrance to which, as she alleged, said appellants willfully failed to securely fence by gates properly covering and protecting said shaft and the entrance thereto. She recovered a verdict and judgment in the trial

court for $2000 damages, and the judgment was affirmed in the Appellate Court.

The statutory provisions upon which the action is based are found in sections 8 and 14 of an act providing for the health and safety of persons employed in coal mines, approved May 28, 1879, and in force July 1, 1879. (Laws of 1879, pp. 207, 210.) In said section 8 it is provided, "the top of each and every shaft, and the entrance to each and every intermediate working vein, shall be securely fenced by gates properly covering and protecting such shaft and entrance thereto." And said section 14 reads as follows: "For any injury to person or property, occasioned by any willful violations of this act or willful failure to comply with any of its provisions, a right of action shall accure to the party injured for any direct damages sustained thereby; and in case of loss of life by reason of such willful violation or willful failure, as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives."

The court, at the instance of appellee, gave to the jury the following instruction:

"The law makes it the duty of every operator and owner of a coal mine to securely fence the top of the shaft by gates properly protecting the shaft and the entry thereto, and if such operator fails willfully to so fence the shaft, and by reason of such failure a person employed about the mine is killed, the owner or operator is liable to the widow of the person so killed for damages, not to exceed the sum of $5,000."

And the court refused to give the two following instructions, which were submitted by appellants, to-wit:

"Although you may believe, from the preponderance of the evidence, that defendants failed to fence the entrance to the

shaft in such a manner as to securely protect the workmen from falling into it, yet if you believe, from a like weight of evidence, that deceased had charge and control of the opening and closing of the entrance, and while so at work willfully left it open, and knew it was open, and while so opened, and while so knowing it, stepped upon the car which was used for closing it, and recklessly exposed himself to the danger of falling into the shaft, and while so exposed, and while so at work thereon, he fell into the shaft, the plaintiff can not recover."

"In order for the plaintiff to recover, it must appear, from the preponderance of the testimony, that her husband, at the time he fell into the shaft, was using the care that a man of ordinary prudence should have used under the circumstances; and if it should appear, from the testimony, that at the time he so fell he had charge of the car, and could, with the use of ordinary care, have placed it over the mouth of the shaft, but failed so to do, and by reason of such failure he fell from it into the shaft, then and in such case the plaintiff can not recover."

The question raised by the rulings of the trial court upon said instructions, and the principal question at issue between the parties to this suit, is, whether or not in a suit prosecuted under section 14 above quoted, for an injury to person or property or a loss of life occasioned by a willful violation of any of the requirements of the act providing for the health and safety of persons employed in coal mines, or willful failure to comply with any of its provisions, it devolves upon the plaintiff to allege and prove the exercise of ordinary care on his part or on the part of the deceased, and whether or not contributory negligence on his part or on the part of the deceased will preclude a recovery.

The provisions of the act of 1879 are very similar to those contained in the prior act providing for the health and safety of persons employed in coal mines, approved March 27, 1872,

and in force July 1, 1872, (Rev. Stat. 1874, chap. 93,) and section 14 of the present act is almost or quite literally the same as section 14 of the former act.

In *Bartlett Coal and Mining Co.* v. *Roach,* 68 Ill. 174, the suit was brought to recover damages for the death of one Roach, alleged to have been caused by the willful failure of the company to comply with the provision of section 8 of the act of 1872, which required that the top of each shaft shall be securely fenced by vertical or flat gates, properly covering and protecting the area of the shaft. It was there said that the title of the act expresses the beneficent purpose that the legislature had in view in the passage of the law, viz, to provide "for the health and safety of persons employed in coal mines." It was there claimed, as here, that the deceased was guilty of such negligence as would prevent a recovery, and the court said: "There can be but little doubt, in view of the evidence, that the accident would not have occurred if the top of the shaft had previously been secured as required by the statute." And also said: "The very object to be attained by the law was to prevent injuries to persons so employed, (*i. e.,* in coal mines,) that the slightest degree of negligence might not prove fatal. It is shown conclusively, by the evidence, that if the gates had been in position the accident would not have happened, notwithstanding the manner in which he did his work."

In the subsequent case of *Litchfield Coal Co.* v. *Taylor,* 81 Ill. 590, it was held that where a party is killed, on attempting to ascend from a coal mine, by the fall of a lump of coal, and it appears that the defendant willfully used uncovered cages for the ascent and descent of persons working in the mine, in violation of the statute, which caused the death, a recovery may be had by his widow, notwithstanding the deceased may not have been free from fault and negligence on his part. Objection was there taken to the instruction of the court, that it excluded from the consideration of the jury the

negligence of the deceased which may have contributed to the injury. It was held that the instruction was, in substance, correct, and it was said: "In the case under consideration it was the willful conduct of the coal company of which the plaintiff complained, and while the deceased may not have been entirely free from fault, yet if the jury found, from the evidence, that the willful conduct of appellant resulted in the injury, the verdict would be justified."

The decision in this last cited case sustained the instruction given by the court, on the ground that under the statute of 1872 contributory negligence was not a defense. The present statute, so far as the question now under consideration is affected, is substantially the same as that of 1872. When the legislature, in 1879, re-enacted, in substance, the statute of 1872, and re-enacted, in the same language, section 14, which gives the right of action, it must be regarded that it acted in view of the interpretation that more than three years before had been placed by this court upon said statute of 1872 and upon said section 14, and intended that in case of injuries occasioned by any willful violation of the act of 1879, or by willful failure to comply with any of its provisions, the right of recovery should not depend upon the exercise of ordinary care by the person injured or the deceased, or be precluded by contributory negligence. This view of the law, as matter of course, is based on the ground that there has been a willful failure to comply with the requirements of the statute. If the statute has been complied with, or if the injury is not occasioned by the willful violation or willful failure denounced by the statute, but by some other alleged negligence of the mine owner, and the person injured or killed fails to exercise ordinary care, then there would be no right of action.

We think that it was not error to instruct the jury that by a willful violation of the law is meant a violation of its provisions, knowingly and deliberately committed. The mine was two hundred and thirty-four feet in depth, and there were

6—143 ILL.

tracks over the shaft, on which ran a flat car, eight feet long, seven feet wide and thirty inches high, and of sufficient size, when in place over the shaft, to completely cover it, and there was an arrangement for keeping the car in its place, when not being moved for the purpose of being dumped, by means of a movable block acting upon a pivot; but the continual tendency of the car, when not blocked, was to go down the incline to the place of dumping, and thus expose the mouth of the shaft. In our opinion it was not error to refuse to instruct the jury, that if they believed, from the testimony, that the defendant, in good faith, for the protection of the entrance, boarded and fenced it, and arranged the car, and the operation of it, to act as a gate or covering for the shaft, and that such protection was sufficient to protect a person in the exercise of the care that a person of ordinary care should, under the circumstances, exercise, from falling into the shaft, then the act of the defendants was not willful, and the verdict should be for them. That which the statute required was that the top of the shaft should be securely fenced by gates properly covering and protecting the shaft and the entrances thereto. As was said in *Bartlett Coal and Mining Co.* v. *Roach, supra,* the very object to be attained by the statute was to prevent injuries to persons employed in coal mines, so that negligence on their part in the manner of doing their work should not prove fatal. Here, the status of the shaft and the entrance to it, as to its being covered and protected, was wholly dependent upon the exercise of due care in operating the car and the movable block acting upon a pivot, and that, manifestly, was not the condition of safety that was contemplated by the statute. By the hypothesis of the instruction no liability is imposed by the statute upon the mine owner, if the party injured or killed could, by the exercise of what would be ordinary care in view of all the circumstances, avoid the injury, no matter how entirely insufficient the covering and protection to the shaft and the entrance thereto. This is placing

a construction on the statute that would render it ineffectual to accomplish the objects that it was intended should be accomplished by it.

The deceased had been in the employment of the appellants, but quit such employment and was paid his wages in full. He afterwards again went to work at the mine. It was not error to instruct the jury that if he so went to work with the knowledge of and without objection from the superintendent of the mine, who was in charge of the work, then the relation of employers and employe existed as between the owners of the mine and said deceased; and it was not error to refuse to instruct the jury that if he went to work without the knowledge of the defendants, then and in such case the defendants were not liable. Such instruction would have misled the jury. The knowledge and implied consent of the superintendent and agent of appellants in charge of the work at the mine was the knowledge and consent of appellants themselves.

We find no error in the record for which the judgment should be reversed. The judgment of affirmance rendered in the Appellate Court is affirmed.

*Judgment affirmed.*