## Kellyville Coal Company v. Desire Strine.

1. MINE EXAMINATION—*what will not excuse failure to make.* The fact that an operator has employed a licensed mine examiner, does not absolve him from liability if such examiner fails to examine the mine and mark the dangerous places, as required by statute.

2. CONTRIBUTORY NEGLIGENCE—*when, not defense.* In an action for personal injuries, under the Miners Act, based upon an alleged wilful violation thereof, contributory negligence upon the part of the plaintiff is no defense.

3. CONTRIBUTORY NEGLIGENCE—*when, might be defense to action for personal injuries under Miners Act.* In such a case if the contributory negligence was such as to constitute a new and independent force which broke the causal connection between the original wrong and the injury, it might, according to the intimation of the court in this case, be a defense to the action.

4. CONTINUANCE—*when denial of, not improper.* The denial of a motion for a continuance because of the absence of a witness is not improper where the testimony of such witness, if present, would have been immaterial.

5. AD DAMNUM—*effect of reference to, in instruction.* While reference to the amount of the *ad damnum* is improper in an instruction, it is not in itself reversible error.

6. OPINION OF COURT—*when instruction does not intimate.* An instruction which tells the jury that they must find a verdict under the evidence and the instructions of the court combined, does not contain an intimation that the court regarded the defendant as chargeable with the negligence claimed.

7. VERDICT—*when, not excessive.* A verdict for $2,000 is not excessive where the plaintiff was a coal miner of the age of thirty-one years at the time of the accident and where the evidence tends to show that he was earning $2.50 to $3 per day, that as a result of the accident he had lost the sight of one eye and is partially paralyzed, and is incapacitated from performing manual labor, and that his condition is permanent.

Action on the case for personal injuries. Appeal from the Circuit Court of Vermilion County; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed November 18, 1904.

H. M. STEELY, for appellant.

SWALLOW & SWALLOW and R. ALLAN STEPHENS, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case under the statute relative to "Mines and Miners" to recover for injuries alleged to have been sustained by appellee through wilful failure and neglect of appellant to comply with said statute. The plaintiff recovered judgment of the sum of $2,000, from which the defendant appeals. At the close of plaintiff's evidence, and again at the close of all the evidence, the defendant moved the court to exclude the evidence and direct a verdict for the defendant, and tendered peremptory instructions as to each count of the declaration, which motion was overruled.

The declaration consists of four counts. The first, second and fourth counts allege that plaintiff required props and cap-pieces to prop and support the roof of the room in which he was employed in mining coal; that he did not have any; that on January 17, 1903, and on prior days, he ordered props and cap-pieces; that defendant wilfully failed to deliver them, and that in consequence thereof a large rock fell from the roof of plaintiff's room, striking him with great force, dislocating certain vertebræ in his back, and otherwise injuring him. The third count alleges that it was the duty of defendant to have its mine examiner inspect all places where men were expected to pass or work and observe whether there were any unsafe conditions, and where such were found, to place a conspicuous mark as notice to all men to keep out; that there was a large loose rock in the roof of the plaintiff's room, which caused an unsafe condition; and that on January 19, 1903, the said mine examiner wilfully failed to inspect said room, and to place a conspicuous mark thereat as notice to all men to keep out, and that by reason of such failure to mark, and while in the usual course of his employment as a miner in said room, the rock fell and struck him, dislocating certain vertebræ in his backbone, and otherwise injuring him; to his damage in the sum of $20,000.

Before the trial was begun the defendant entered a mo-

tion for a continuance of the cause on the ground of the absence of a witness, one John Crayton, by whose affidavit it appeared that if present he would testify that he was in the room where the plaintiff had been working, on the morning of the accident and before it occurred; that he had a conversation with the plaintiff during which affiant noticed that the rock in the roof, which afterwards fell, was loose; that he called the attention of plaintiff to the fact and told him that it was unsafe and that he should not go under it. The affidavit of counsel further showed that the defendant knew of no other witness by whom it could prove these facts. The trial court held that inasmuch as the action was based upon the statute, this evidence, if admitted to be true, would constitute no defense under either count of the declaration, and therefore overruled the motion for continuance.

The evidence discloses that appellee had been working in appellant's mine for about five years; that some six months prior to the accident, he and his step-son had turned a room known as No. 11, which at the time of the accident was thirty feet in width and seventy-five feet deep from the side of the entry. On Saturday afternoon, January 17, 1903, appellee fired two shots in the room and then quit work. Over the place where the shots were fired was what is known as a "roll" which projected out into the room five or six feet from the face of the coal and extended clear across the room. On resuming work on Monday morning, the 19th, appellee, upon sounding the roof, discovered that a bit of the rock forming the "roll" was loose. At about 10:30 o'clock, while appellee was on his knees endeavoring with a pick to remove the coal under the roll which the shots had failed to throw out and which was about four and one-half feet deep, a piece of rock about eighteen inches thick fell upon and injured appellee.

The evidence shows that timbers at mines are furnished only in even foot lengths, and nearly all upright timbers used at this mine are seven feet in length, while cross-bars or horizontal timbers are nine feet in length. In other

words, the length of the upright timbers depends upon the thickness of the vein of coal, and the length of the horizontal timbers depends upon the width of the entries and the width of the room necks. Props are used both in entries and rooms, but cross-bars are used only in entries and room necks, or narrow passages.

The evidence further shows that, if by reason of a horseback or roll occurring in the roof, a little longer timber is required, it was the custom of the miners, without making a special order for a longer timber, to put a cap-piece or wedge over the top of the prop and sometimes one under the bottom also, thus lengthening the timber seven or eight inches, and where the timber is too long the miners themselves either dig a place in the fire clay at the bottom or cut a piece off of the timber so that they can use it.

The first, second and fourth counts of the declaration charge a wilful failure to deliver timbers to appellee upon his order, and that such wilful failure was the cause of the accident and injuries sustained by him. The evidence under these counts was exceedingly conflicting.

Appellee and his step-son testified that on the morning of the accident they had no timbers in the room, and that they went out upon the entry and up and down the entry for a long distance on each side of their room and could find no timbers to prop and timber this loose rock or the roll in their room; that there were none, either in the entry or in the room, except three cross-bars or nine-foot timbers in the neck of their room, one of which had been broken, and the other two bent by the weight of loose slate that came down upon them, and that they had taken these timbers down and thrown them to one side, and that the same were not fit to cut and use as short props to support this loose rock or roll in their room. They further testified that they had ordered timbers from one Farley, the timber man, on the Saturday previous to the accident, but that none were delivered to them; that if they had been furnished timbers, they could have propped the roof so as to have prevented the falling of the rock; that timbers were

usually delivered to them at the side of the switch track in the neck of the room or on the side of the entry next to the room neck. The testimony of appellee and his step-son is not corroborated by any other witness. Seven witnesses, called by appellant, all testified that at the time of the accident there were sufficient and suitable timbers, either in the room, the room neck or in the entry adjacent thereto, properly to prop the roof. We shall not attempt to further rehearse the evidence relative to the question. We have, however, carefully read and considered the same, and are of opinion that the averments of the declaration as to a failure to furnish sufficient and suitable timber to appellee, are not sustained by the greater weight of the evidence, and that therefore the jury would not have been warranted in returning a verdict for appellee under the first, second and third counts.

The issues under the third count were whether or not there had been a wilful failure by appellant company to have the room examined by its mine examiner on the night preceding the accident, and the further failure by said examiner to place a conspicuous mark thereat, as notice to all men to keep out.

Section 18 of the statute relating to " Mines and Miners " (R. S. 1901, 1214) provides that:

" (a) A mine examiner shall be required at all mines. His duty shall be to visit the mine before the men are permitted to enter it, and, first, he shall see that the air current is traveling in its proper course and in proper quantity. He shall then inspect all places where men are expected to pass or to work, and observe whether there are any recent falls or obstructions in rooms or roadways or accumulations of gas or other unsafe conditions. He shall especially examine the edges and accessible parts of recent falls and old gobs and air courses. As evidence of his examination of all working places, he shall inscribe on the walls of each, with chalk, the month and the day of the month of his visit.

" (b) When working places are discovered in which accumulations of gas, or recent falls, or any dangerous conditions exist, he shall place a conspicuous mark thereat as

notice to all men to keep out, and at once report his finding to the mine manager.

No one shall be allowed to remain in any part of the mine through which gas is being carried into the ventilating current, nor to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe.

" (c)   The mine examiner shall make a daily report of the conditions of the mine, as he has found it, in a book kept for that purpose, which shall be preserved in the office for the information of the company, the inspector and all other persons interested, and this record shall be made each morning before the miners are permitted to descend into the mine."

Upon the question as to whether the mine examiner had made an examination of the room in question on the day of the accident before appellee entered it, the evidence was also conflicting.

Appellee and his step-son both testified that the first thing they did when they entered the room on the morning in question was to look for chalk marks.   That they examined both the roof and timbers, and found none of any kind, except the figures "17" on a timber about twenty-four feet from the face of the coal, which referred to the examination of Saturday, the 17th.

Olroyd, the mine examiner, testified that he examined the room on the morning of the accident, and finding the rock loose, wrote with chalk, on the face of the roll, figures indicating the day of the month, and also a cross-mark, but that owing to the dampness of the room chalk-marks would not show as distinctly as in a dry place.   We cannot say that the jury were unwarranted in finding that no examination was made of the room.   While the testimony of Olroyd as to the examination of the room was uncontradicted, if it be true, as the greater weight of evidence upon the question seems to indicate, that there were no chalk marks in the room, it may be reasonably inferred that no examination was made.

Appellant contends, however, that inasmuch as it employed an examiner licensed by the state and had no

notice that he had ever neglected his duties it cannot be held liable for a wilful failure to have the mine examined, and the rock marked, even though the examiner had failed to discover and mark some dangerous condition.

In the case of Kellyville Coal Co. v. Hill, 87 App. 424, cited by appellant, we said: "The statute does not provide how nor to what extent the examination shall be made. If the operator employs an examiner, holding a certificate authorizing him to act as such, and the examination is made at the time required, that, in our opinion, would constitute a compliance so far as the operator is concerned. At all events, a mere mistake of the examiner, or a failure on his part to detect a defective place in the roof, should not constitute a wilful neglect of the operators within the meaning of the statute."

And in the case of Himrod Coal Co. v. Schroath, 91 App. 234, also cited by appellant, we further said: "Where the operator of a coal mine, before permitting persons to enter such mine, caused it to be examined by a competent and duly authorized agent, who in good faith makes such examination, to ascertain if there are any dangerous conditions which render it unsafe for men to work therein, and reports the mine to be in a safe condition when in fact it is not, such operator ought not to be held liable to the widow of a person killed by such dangerous conditions."

These cases do not sustain the contention of appellant. As we have said, the jury were warranted in finding that no examination of the room whatever was made by the examiner. Had one been made, and by reason of a mistake of judgment, and not by mere neglect of duty, the examiners had failed to mark the room, the authorities cited might be applicable. Where, however, the duty to examine is entirely neglected, it cannot be said that such neglect is other than wilful. An act "consciously" omitted is "wilfully" omitted in the meaning of the word "wilful" as used in the enactment of the legislatures relative to the duty of mine owners. Odin Coal Co. v. Denman, 185 Ill. 413; Donk Bros. Coal Co. v. Peton, 192 Ill. 41.

Nor can it be said that such wilful neglect on the part of the examiner is not attributable to appellant. The mere fact that the examiner is licensed by the state and that appellant is compelled to employ only such examiners as are so licensed, certainly does not relieve the operator from responsibility for his acts or omissions; so to hold and permit an operator thus to shield itself from liability for violations of the statute, would be largely to defeat its purpose and object.

Section 33 of the statute, in part, provides that " for any injury to person or property occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damage occasioned thereby."

If, therefore, the jury were warranted in finding that the injuries to appellee were occasioned by the negligence averred in the third count of the declaration, a verdict thereunder in his favor was proper.

Counsel for appellant further contends that the evidence shows that appellee was aware of the loose rock and of the danger incident to working under it; that a chalk or cross mark on the rock would have given him no greater notice or knowledge of the condition and danger than was given him by the witness Crayton; that if he acquired the same or greater notice from Crayton, then it cannot be said that the absence of the mark was the proximate cause of the accident and injury; that when a person has knowledge of a defect and the danger arising therefrom, and is told to avoid it, if he persists in encountering it and in consequence is injured, his want of notice from some particular person or in some particular manner, ceases to be the proximate cause of the injury, and the real and sole cause is his own negligence. It is admitted that the defense of contributory negligence is unavailing as a defense to an action for a wilful violation of the statute, but it is insisted that there is a wide distinction between that defense and the defense that the alleged injury was not the proximate result of the violation of the statute.

The evidence clearly shows that appellee must have been aware of the dangerous condition of the rock when he started to work under it, and that no reasonably prudent man would have done so. He was therefore guilty of contributory negligence. Contributory negligence being once established, the fact that any number of persons, not in authority, warned him of the danger, becomes wholly immaterial, as it would be but cumulative proof thereof. While it is true that appellee would not have been injured but for his own negligence, it does not necessarily follow that such negligence was the proximate cause of the injury. He knew that the law required an examination of the room by an experienced examiner, licensed by the state, and that in case the condition of the same was found by him to be unsafe, it was his duty to give notice thereof by placing a mark of warning in a conspicuous place. In the absence of such warning, appellee had a right to assume that upon examination the room had been found to be safe and to rely upon such assumption, and the fact that he took chances that no reasonably prudent man would have taken under similar circumstances is but additional proof of his contributory negligence. The rule invoked by counsel, that the master is not required to take more care of the servant than the servant is of himself, is not applicable to cases under the statute in question which was passed in obedience to the mandate of the constitution making it the duty of the general assembly to pass such laws as may be necessary for the protection of operative miners and to provide for the enforcement of the same by such penalties and punishments as may be deemed proper. Its purpose is clearly to throw additional safeguards about the lives, limbs and health of miners, and in cases of conscious violations of the same by operators, to relieve operative miners, so far as it is possible to do so by legislative enactment, from the consequences of their own folly or want of foresight. Catlett v. Young, 143 Ill. 74.

If the defense of contributory negligence could be interposed to actions thereunder, the statute would be ren-

dered largely ineffective.   In actions for personal injuries, the contributory negligence, if any, of the plaintiff, almost invariably follows, in point of time, the negligent act complained of, and intervenes between it and the injury.   To hold, as contended by counsel, that " the party who last has a clear opportunity to avoid the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it," would therefore, in most cases, nullify and render nugatory the well-established rule that contributory negligence cannot be interposed as a defense in actions under the statute in question.   We are of opinion that the negligence of appellee did not constitute a new and independent force which broke the causal connection between the original wrong and the injury; that if the jury believed from the evidence that plaintiff would not have been injured but for the negligence of appellant's examiner, as charged, they were justified in finding that his injuries were occasioned thereby, within the meaning and intention of the statute.

As is well said by Justice Creighton in Willis Coal & Mining Co. v. Grizzell (100 App. 483), " The true rule in such cases is, that if the wilful violation of the statute ' occasioned ' the injury, then it is wholly immaterial whether the consequence of such violation, as it did in fact occur, could have been foreseen or not, nor whether the injury was directly or indirectly caused by such violation.   It is sufficient that the violation of the statute was wilful, and that it did in fact occasion the injury."   In the same case the court uses the following language :

" Counsel contend that the death ' was not principally and directly caused by ' this violation, and cite in support of this contention, Coal Run Coal Co. v. Jones, 127 Ill. 379, Illinois Fuel Co. v. Parsons, 38 App. 182, and Missouri and Illinois Coal Co. v. Schwalb, 77 App. 593. These cases do not support this contention.   None of them hold that to warrant a recovery, the death must have been directly caused by the violation of the statute, nor can this be inferred from anything said by the court in any of these

cases.   The statute is, for any injury occasioned, a right 'of action shall accrue for any direct damages sustained. The word 'direct' does not pertain to the cause of the injury, but to the effect of it."

In Donk Bros. Coal & Coke Co. v. Stroff, 100 App. 582, affirmed 200 Ill. 483, it is said : " The damages provided in a case like this, have been classed by the legislature with other liabilities for violations of the statute, under the generic terms of penalties.   No conduct of the deceased, short of wilfully seeking the very injury of which appellee complains, can have the effect of barring a recovery, when the defendant's wilful conduct has brought about such injury."

In the case of Western Anthracite Coal and Coke Co. v. Beaver, 95 App. 96, affirmed 192 Ill. 333, it is said: " It is apparent from the evidence that the deceased knew of the danger of the rock's falling, which falling caused his death; and yet, so knowing, took his seat under it while sharpening a tool, when there appears to have been no reason why he should have sat in that dangerous place. But we do not understand that when ' wilful neglect or omission ' to discharge a statutory duty is alleged and proved, that contributory negligence on the part of the person injured in consequence of such neglect constitutes a defense."   Citing Carterville Coal Co. v. Abbott, 181 Ill. 495; Odin Coal Co. v. Denman, 185 Ill. 413.

The question was one for the determination of the jury, and we are not prepared to say that it erred in its finding in that particular.   We think the jury was warranted in presuming that if, in addition to his own knowledge of the dangerous condition, appellee had received a warning from the examiner, to which he was by law clearly entitled, he would not have undertaken to work under the rock; and thereby escaped injury.   We are therefore of opinion that the evidence warranted the jury in finding that the averments of the third count of the declaration were established, and in finding for the plaintiff thereunder.

Under the views herein expressed, the trial court did not

err in refusing the motion for a continuance nor in refusing to take the case from the jury, as to either or all counts of the declaration. Notwithstanding the greater weight of the evidence failed to sustain the averment of the first, second and fourth counts of the declaration, there was evidence tending to establish each of them, and it is well settled, that upon consideration and determination of motions of this character it is not the duty of the court to weigh the evidence. Chicago City Ry. Co. v. Loomis, 201 Ill. 118.

It is assigned as error that the trial court erred in refusing a number of instructions offered by appellant. The instructions referred to, with the exception of the ninth, were each and all at variance with the law as already stated, and were properly refused.

The criticism of appellee's ninth given instruction is unwarranted, it being in accordance with the views herein expressed.

Appellant's ninth refused instruction told the jury that no recovery could be had because timbers may not have been delivered on the miner's cars or at the usual place. Inasmuch as the question was not at issue in the case, either under the pleadings or evidence, the refusal of the instruction could not have prejudiced appellant.

Appellee's tenth given instruction told the jury, in substance, that if, under the evidence and the instructions of the court, they found the defendant guilty, they should give the plaintiff such damages, not exceeding the amount claimed in the declaration, as they believed from the evidence he had sustained by reason of such injury. While the practice of referring the jury to the amount claimed in the *ad damnum* of the declaration has been repeatedly condemned, so doing has never been held to constitute reversible error. Central Ry. Co. v. Bannister, 195 Ill. 48. The instruction condemned in Muren Coal Co. v. Howell, 204 Ill. 515, the giving of which was held to be reversible error, was subject not only to the criticism in question, but to the further objection that it failed to restrict the jury to the legal rule of damages. The instruction under considera-

Kellyville Coal Co. v. Strine.

tion is not subject to said last objection. It is further urged that the instruction is erroneous in that it told the jury that they must find a verdict under the evidence and instructions of the court combined; that such language coming from the court might have been regarded by the jury as an intimation that the court was of opinion that the defendant was chargeable with negligence. The criticism is captious and without merit. The language referred to, could not reasonably be construed by the jury to mean other than that, in arriving at their verdict, they were to be governed by the evidence and by the law as given them by the court, which was unquestionably but properly stating their duty. C. & A. R. R. Co. v. McDonnell, 91 App. 488; affirmed, 194 Ill. 82.

Appellant complains that instructions numbered 4, 5, 7 and 8, given for appellee, were erroneous for the reason that they ignored the affirmative defenses which appellant's evidence tended to establish. The contention is untenable. Similar instructions have been repeatedly held by the Supreme Court to be unobjectionable. City v. Kostka, 190 Ill. 130; Mount Olive Coal Co. v. Rademacher, 190 Ill. 542; C. & A. R. R. Co. v. Howell, 208 Ill. 155.

Appellee's 3rd, 4th, 6th and 7th given instructions, of which complaint is also made, refer to the first and fourth counts, under which we have held that the evidence does not justify a recovery. They are not, however, subject to the objections urged thereto. The same may be said as to the alleged errors of the trial judge in his rulings upon the evidence. The hypothetical question objected to was proper and related to matters not within the common knowledge of ordinary persons.

It is strenuously urged that the damages awarded are excessive. There is evidence in the record tending to show that appellee was thirty-one years of age at the time of the accident; that he was earning from $2.50 to $3 per day; that as the result of the accident he has lost the sight of one eye and is partially paralyzed; that he is incapacitated to perform manual labor, and that such condition is per-

manent. The extent of his injuries and the amount of damages sustained by him by reason thereof, were questions for the determination of the jury, and in the absence of any showing that they were actuated by passion or prejudice, their verdict will not be disturbed.

Other errors are assigned, all of which have been duly considered, but except as they are covered by the foregoing discussion, we do not find that they call for further consideration. We are satisfied that no substantial. error was committed to the prejudice of appellant and the judgment will be affirmed.

*Affirmed.*