## WICK et al. v. GUNN et al.

No. 8010—Opinion Filed Dec. 11, 1917.

(169 Pac. 1007.)

1. **Master and Servant—Workmen's Compensation Law — Construction — Remedies.**

The Workmen's Compensation Act of this state (Laws 1915, c. 246), must be construed as a whole, and all presumptions indulged will be in favor of those for whose protection the statutory compensation was fixed, and, who, by the terms of the act, are deprived of the ordinary remedies open to others whose rights are invaded.

2. **Same—Right to Compensation—Burden of Proof.**

In order to defeat an award for injuries under the Workmen's Compensation Act, the case must come clearly within the statutory exceptions, barring the award. The burden of proof is upon the employer to establish facts constituting a bar to compensation.

3. **Same—"Willful" Act of Servant—Construction of Statutes.**

Under that part of section 1, art. 2, c, 246, Sess. Laws 1915, relieving the employer from liability for compensation to an injured workman "where the injury results directly from the willful failure of the injured employe to use a guard or protection against accident furnished for his use pursuant to any statute or by order of the state labor commissioner," the mere voluntary and intentional failure of a workman to use such safety appliance does not nec-

essarily render the omission willful. The willful failure contemplated carries with it the idea of premeditation, obstinacy, and intentional wrongdoing (citing Words and Phrases, First Series, Willfully).

### 4. Same—Willful Act of Servant—Question of Fact.

Willful failure of workman to use guards or safety appliances provided in pursuance of law or by order of the state labor commissioner is a question to be determined by the Industrial Commission from the facts in each particular case, and if there is any evidence reasonably tending to support a finding of such board that the failure to use such guards or appliances was not willful, the action of the board will not be disturbed.

### 5. Master and Servant — Master's Duty—Guards and Safety Appliances.

It is the duty of employers to provide proper guards and safety appliances for machinery used by workmen and to install proper guards and appliances ordered by the state labor commissioner.

(Syllabus by Stewart, C.)

Action brought in Supreme Court to vacate a decision and award of the State Industrial Commission in favor of Charles D. Gunn as claimant and against S. J. Wick, as respondent, and the Fidelity & Deposit Insurance Company of Maryland, as insurance carrier. Petition denied, and award by the State Industrial Commission sustained.

H. A. King, for petitioners.

S. P. Freeling, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for respondents.

Opinion by STEWART, C. The respondent, S. J. Wick, and the insurance carrier, the Fidelity & Deposit Insurance Company of Maryland, seek review of a decision of the State Industrial Commission awarding compensation to claimant, Charles D. Gunn, for injuries sustained during the course of his employment by the respondent; it being urged that the award should not have been made because the facts show that claimant failed to use a safety appliance provided, which would have prevented the injury.

The statutes and the rules of this court make the decisions of the State Industrial Commission on questions of fact final. The amount of the award in the instant case is not in controversy, and we are called upon only to say, as a matter of law, whether or not, under the facts, any compensation should have been awarded. This duty involves a construction of that part of section 1, art. 2, of the Workmen's Compensation Act which bars an award "where the injury results directly from the willful failure of the injured employe to use a guard or protection against accident furnished for his use pursuant to any statute or by order of the state labor commissioner." Section 3746, Rev. Laws 1910, provides that in a factory or an institution where machinery is used, "all machines shall be provided with loose pulleys and all vats, pans, planers, cogs, gearing, belting, shafting, set screws and machinery of every description shall be **properly guarded.**" (The italics are ours.) Counsel indulge in extended discussion as to whether the machinery was properly guarded. In our opinion, the absence in this case, if such existed, of a proper guard or of such guard as was authorized by the state labor commissioner, is only material: First, in so far as the same may affect the question of willful failure of the claimant to use the guard provided; and, second, in so far as the claimant may be held to be relieved from using an improper or unauthorized guard.

The word "willful" was used with evident purpose on the part of the lawmakers; hence a proper construction and definition of such word as applied to the legislation involved is imperative. We are not without numerous definitions of the word by both lexicographers and jurists. The same are apparently in slight conflict, but are nevertheless susceptible of being harmonized. In the progress of language and the development of ideas, it has become a rule, not only of legal, but of grammatical, construction, that a great number of words have varying significance, more or less related, but often far removed from the orignal etymological meaning, according to the several connections in which a particular word may be used.

It is the contention of the petitioners that the word "willful" pertains only to an act of the will, and is synonymous with voluntary or intentional. It is sometimes so defined. "Willful," as used in criminal matters, often refers merely to a voluntary act. However, this rule is not absolute. For an act to be culpable, it must be willing, but not necessarily willful. The word "willful" signifies full of fixed, determined, stubborn; and by constant use in certain connections it now generally signifies stubbornness in wrongdoing or reckless disregard of consequences. It will be found that, where the courts have held the word to be equivalent to "voluntary" or "intentional," such construction was adopted where the word was used in connection with acts criminal per se, and that, even in criminal cases where the acts forbidden by statute are not wrong in themselves, it is held that

"willful" has a deeper significance than merely voluntary or intentional. It is held in Catlett v. Young, 143 Ill. 74, 32 N. E. 447, that the phrase "willful violation of law" means a violation thereof, knowingly and deliberately committed. The same is held in United States v. Edwards (C. C.) 43 Fed. 67; Horton v. Life Assurance Society, 35 Misc. Rep. 495, 71 N. Y. Supp. 1060; Wales v. Miner, 89 Ind. 118, 127. And it is held that the word "willfully" means not merely voluntarily, but with a bad purpose. Words and Phrases, 7469; Potter v. United States, 155 U. S. 438, 15 Sup. Ct. 144, 39 L. Ed. 214; Commonwealth v. Kneeland, 37 Mass. (20 Pick.) 206; Williams v. People, 26 Colo. 272, 57 Pac. 701; Spurr v. United States, 174 U. S. 728, 19 Sup. Ct. 815, 43 L. Ed. 1150; Hateley v. State, 118 Ga. 79, 44 S. E. 852; North Carolina v. Vanderford (C. C.) 35 Fed. 282, 287; Chicago, St. L. & P. R. Co. v. Nash, 1 Ind. App. 298, 300, 27 N. E. 564.

In State v. Alcorn, 78 Tex. 837, 14 S. W. 663, and Words and Phrases, 7469, it is said: "Bad motive is necessary * * * to make an act willful, and that the fact that the act or omission was done in obedience to the will * * * is not enough."

It is held in Myers v. Standard Telegraph Co. (Iowa) 92 N. W. 720, that a willful act is the wanton doing of the same without reasonable excuse. Under a statute fixing liability upon a railroad company for damages to stock running at large, in the absence of a fence constructed by the railway company, unless the injury complained of was occasioned by the willful act of the owner of the stock or his agent, the court, in Stewart v. B. & M. R. R. Co., 32 Iowa, 561, says:

"A willful act is an obstinate, stubborn, perverse act; and an act done willfully is one done stubbornly, by design, and with set purpose."

Webster defines "willful" as "obstinate; perverse; inflexible; stubborn; refractory."

We next consider the construction of the word in its particular application to workmen's compensation laws. Such legislation is new in this state; in fact, new to our entire country. It began in Germany, and, under some changes, found its way to England, later reaching the United States, existing at present, in some form or other, in 32 states. In Adams v. Iten Biscuit Co., 63 Okla. 52, 162 Pac. 938, this court upholds the constitutionality of the Workmen's Compensation Act of this state. Mr. Justice Hardy, in delivering the opinion, after an

able and exhaustive review of the history and objects of kindred legislation, says:

"Instead of the losses being borne as heretofore in a great majority of cases, by the injured employe or his dependent ones, it was the belief that such losses should be borne by the industries causing them, or, more accurately speaking, by consumers of the products of such industries, and that thereby wasteful and unnecessary litigation, with all of its resultant evils, could be eliminated."

It was the intention of this act to make the business bear the burden of incidental and accidental injuries without regard to the question of negligence, either on the part of the employer or the employe. In the long run the public, and not the persons immediately involved, except to the extent that they are members of society at large, pay the bills. The instant case presents to this court for the first time any question growing out of the operation of the law. An examination of the legislation of Germany, England, and the various American states discloses no other statute identical with ours as to defenses to claims arising under the law. Most of the statutes, however, provide, that "willful misconduct," without specifying the particular acts resulting in the injury, is a bar to an award. Our statute specifically names the willful acts that bar compensation. The law in England has received judicial construction to a greater extent than elsewhere. In Tennent v. Broxburn Oil Co., Ltd., S. C. 1907 (Eng.) 581, it is said:

"The word 'willful' as applied to the conduct of the injured person signifies moral blame, and if there is no moral blame, the case would not come within the scope of the stautory exception."

In Johnson v. Marshall & Sons, Ltd., App. Cas. 1906 (Eng.) 409, 75 L. J. K. B. 868, Lord Lobourne, speaking for the court says:

"It was willful in the sense that the matter presumably seemed of his own accord, but the word 'willful' I think, imports that the man's conduct was deliberate, not merely a thoughtless act on the spur of the moment."

In George v. Glasglow Coal Co., Ltd., App. Cas. 1909 (Eng.) 123, it is held that the question of serious and willful misconduct on the part of the claimant is a question of fact to be determined by the tribunal trying the cause, the court using the following language:

"It is not the province of the court to lay down that the breach of a rule is prima facie evidence of serious and willful mis-

conduct. That is a question purely of fact to be determined by the arbitrator as such. The arbitrator must decide for himself, and ought not to be fettered by artificial presumptions of fact prescribed by a court of law."

In Johnson v. Marshall & Sons Co., supra, it is said in the syllabus:

"The mere breach of a rule or order from which no serious consequences could reasonably have been anticipated is not such 'serious and willful misconduct' under Workmen's Compensation Act 1897 as disentitles to compensation for death or injury occasioned thereby. The onus of proving such misconduct lies upon the person asserting it."

In George v. Glasglow Coal Company, supra, it is said:

"When an act is momentary and inadvertent, not deliberate, it cannot be said to be willful; willfulness must be willfulness in wrongdoing, knowing the quality of the act."

The statute in Wisconsin makes any "willful misconduct" a bar to the compensation, and in construing such provision the court in Nekooska-Edwards Paper Co. v. Industrial Commission of Wisconsin et al., 154 Wis. 105, 141 N. W. 1013, L. R. A. 1915A, 348, Ann. Cas. 1915B, 995, says:

"A finding by the commission under the Workmen's Compensation Act that, although an injury to an employe was due to his intoxication, it was not caused by his willful misconduct so as to relieve the employer from liability under the statute, cannot be disturbed by the court where it has no authority to review the evidence."

In Gignac v. Studebaker Corporation, 186 Mich. 574, 152 N. W. 1037, it is said in the syllabus:

"Where a railroad employe was injured while climbing over the bumpers of a freight train to which a live engine was attached, without stopping to see where the trainmen were and without knowing whether the train was about to move, he was not, as a matter of law, guilty of such intentional and willful misconduct, as would defeat recovery under Workmen's Compensation Act."

It is held by the Supreme Court of Massachusetts in the case of In re Nickerson, 218 Mass. 158, 105 N. E. 604, Ann. Cas. 1916A, 790:

"'Serious and willful misconduct' for the consequences of which the employe is not entitled to compensation under the Workmen's Compensation Act (St. 1911, c. 751, p. 2, par. 2) means more than even gross neglect, and resembles closely the wanton or reckless misconduct which renders one liable to a trespasser or to a bare license."

The court in the Nickerson case further says:

"A finding by the Industrial Accident Board, in accordance with the report of the arbitration committee, that the employe was not guilty of serious and willful misconduct, is conclusive on appeal, unless shown to be unwarranted by the evidence."

Now, applying the law to the facts in this case, the duty rests upon us to determine whether or not the uncontroverted facts are such that all reasonable persons must conclude that the failure of the claimant was "willful" in the sense that the word is used in the statute under consideration. The willfulness of the claimant was a question of fact determined by the Industrial Commission, and if there is evidence to support the finding, we are powerless to interfere. We cannot substitute our findings for those of the commission. The material evidence before us shows that at the time of the accident the claimant was operating a machine being a combination edger and planer; that he was experienced and used to such work; that he had been working for the respondent for only a few days, but had, prior to his employment by the respondent, operated such a machine without a safety guard; that such use was not unusual; that the machine in question had an out-of-date guard, not automatic, which, when claimant began to work, was hanging by the machine and out of place; that the safety appliance as approved by the labor commissioner was automatic, easier to handle, and much safer than the one provided by the respondent; that the respondent was aware of such improved automatic safety appliance, but testifies that he merely used the one that came with the machine. It is admitted by the respondent in his testimony that, had the automatic guard been provided, the accident would not have happened. There is also evidence to show that, if the guard furnished had been put in place and properly used by the claimant, the injury might have been averted. The evidence shows that on Wednesday, the next day after the claimant began work, the respondent said to the claimant, "Charley, use your guard whenever possible to use it," and that the respondent showed the claimant how to adjust the guard in order to make it work more easily; that at the time of the injury the claimant was making a door out of flooring lumber; that after making the door he desired to cut the tongue off one

piece of flooring, and, in order to save time for his employer and inconvenience to himself, he ran this piece of lumber through the machine without attaching or using the guard; that, on account of the character of the guard and its not being in place, it would have required extra time to have used the same; that to do such work without a guard was not unusual and not necessarily dangerous, and that the time required to do the work without adjusting the guard was but momentary. It does not appear that the claimant had any thought of violating the law or of other wrongdoing, but used the machine in the manner to which he had been accustomed at other places where he had worked, and in so acting carelessly received an injury resulting in the loss of two phalanges of the index finger; that no rules were posted and no notice published showing the requirement of the law as to the use of machinery; that the guard recommended by the labor commissioner was simple and inexpensive; that the one provided was complex, unhandy, and required considerable time to adjust and use. The state labor commissioner as well as the claimant and respondent were witnesses in the hearing before the Industrial Commission, and there was no substantial conflict in their testimony.

The facts and circumstances in evidence raised a question of fact which was decided adversely to the respondent. Reasonable men might have reached a different conclusion than that reached by the Industrial Commission, but it cannot be maintained that other reasonable men would not have concurred in the finding made. We do not determine whether or not the claimant's failure was willful. We hold, however, that the mere intentional and voluntary failure on the part of a workman to use a proper safety appliance does not necessarily make the act willful as contemplated by the exception under consideration. The willfulness contemplated amounts to more than a mere act of the will, and carries with it the idea of premeditation, obstinacy, and intentional wrongdoing. The burden is upon the employer to show that the failure of the claimant comes within the exception defined by statute. Workmen of the class enumerated, by the terms of the act, cannot maintain an action at law for damages arising in the course of their employment which was formerly possible. The compensation fixed, while meant to be more certain and speedy, is not commensurate in amount with the injury sustained. As rather in the nature

of a quid pro quo for being deprived of the right of action formerly afforded, partial compensation for injuries received in the course of employment is allowed, notwithstanding contributory negligence of the workman and lack of negligence on the part of the employer. The act must be construed as a whole, and all presumptions indulged will be in favor of those for whose protection the statutory compensation was fixed, and who by the terms of the act are deprived of the ordinary remedy open to others whose rights are invaded. Contributory negligence and willful failure to use a safety appliance must not be confused. The mere voluntary failure to use the same would constitute contributory negligence and to hold that such failure in itself barred relief would, in effect, preserve a defense abrogated by the act.

This case presents another question. The Industrial Commission found that the guard furnished by the respondent did not comply with the statute requiring that "machinery of every description shall be properly guarded," nor with proper orders of the state labor commissioner. There being evidence to support such finding, we are concluded as to the same. It would logically follow that the claimant, being charged only with the duty of using guards provided in pursuance of law or by order of the labor commissioner, cannot in this case be charged with failure to use the guard furnished; there being evidence to show that the same was neither a proper guard nor one provided pursuant to order of the labor commissioner.

The petition filed by respondent in this court must be denied, and the award upheld; and it is so ordered. It is further ordered that the State Industrial Commission proceed at once to enforce its judgment and order allowing the award to the claimant.

By the Court: It is so ordered.