2000 OK CIV APP 43

**Raymond Lee ASHLEY, Petitioner,**

v.

**MONSANTO d/b/a Nutrasweet and Cigna Property & Casualty Co., Respondents.**

**No. 93,133.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 21, 1999.

Certiorari Denied Feb. 29, 2000.

Robert A. Flynn, Frasier, Frasier & Hickman, Tulsa, Oklahoma, for Petitioner.

Neil F. Layman, Layman & Padgett, Tulsa, Oklahoma, For Respondents.

*OPINION*

GOODMAN, Vice Chief Judge:

¶ 1 This is a proceeding to review an order of a Workers' Compensation Court three-judge panel affirming the trial court's order denying the claimant's claim. The issue is whether competent evidence supports the conclusion that the claimant was injured as a result of his willful failure to use a mandatory procedure to guard against such injuries. Based upon our review of the record and applicable law, we vacate the order and remand for further proceedings.

I

¶ 2 Claimant Raymond Lee Ashley filed his Form 3 April 16, 1997, alleging he injured his left hand, arm, and shoulder February 4, 1997, when his arm was caught in a rotary valve during the course of his employment as a level 1 machine operator for employer Monsanto d/b/a/ Nutrasweet. As a result of his injuries, the claimant suffered amputation of the first digits of his left hand index finger and middle finger. The employer terminated the claimant's employment effective February 14, 1997, for "a willful failure to carry out definite safety instructions" which he knew were required by state and federal regulations. The claimant sought temporary total, and permanent partial disability benefits, and vocational rehabilitation.

¶ 3 The trial court held a hearing on the matter January 27, 1999. The employer alleged that the claimant failed to follow required safety procedures in violation of 85 O.S. Supp.1998, § 11(A)(2), which exempts an employer from liability for work-related disability in the event of:

> An injury resulting directly from the willful failure of the injured employee to use a guard or protection against accident furnished for use pursuant to any statute or by order of the Commissioner of Labor; . . . .

¶ 4 The claimant testified that on the day he was injured, contamination had been reported in an industrial pipeline, and he had been told to locate the contamination. In the course of his search, he "went to a piece of pipe that I thought maybe there was contamination in. There was a small door that accesses this piece of pipe." He testified:

> I started out by opening the door, I put my hand downstream, feeling around, started back up the other direction. I felt some product kept flaking off. And the next thing I know, this piece of machinery, I feel it pinching down on my fingers.

The claimant admitted that he was well aware of mandatory "lockout/tagout procedures" which required a worker to disable a rotary valve, for example, when working on that piece of machinery. He said the procedure also ensures that someone else does not turn the machine on while it is being worked on. He stated, however, that he did not lock out the rotary valve because:

> I had no intentions of even going to that piece of machinery in the first place. All I was doing was checking the pipe that was downstream of it and just, inadvertently, just didn't pay any attention where I was at. . . . All my intentions were to inspect the pipe downstream of there. . . . I . . . did not see a reason why I should lock out a piece of machinery when I had no intentions of being anywhere close to it. I explained before that I had intention of inspecting the pipe downstream and did not have intentions of going to the valve itself. . . . If I intended to go to a valve, yes, I would lock that valve out. . . . I was in proximity of a valve, yes, sir [but] I had no intentions of going near it, didn't feel like that I needed to [lock it out]. . . . I just didn't make a conscious decision to stick my hand in there. I did make a conscious decision to inspect the pipe downstream of this piece of machinery, the rotary valve.

Both parties submitted medical evidence, and each lodged a general probative value objection, thus preserving nothing for our review.

¶ 5 In an order filed February 22, 1999, the trial court denied the claim, based upon a finding that:

> [T]he claimant's injury resulted directly from his willful failure to use a guard or protection against accident furnished for use pursuant to statute, i.e., mandatory lockout, tagout procedures. 85 O.S. § 11(A)(2); 29 U.S.C. § 654(b); 29 C.F.R. § 1910.147. This finding is based in part on claimant's own testimony that he did not see why he needed to lockout and tagout the equipment because he did not believe that where he placed his hand inside the machinery put him at any risk of injury. Cf. Respondent's Exhibit # 3. Willfulness within the meaning of § 11(A)(2) means only the intention to do the act that fails to utilize the protection against accident; it does not require an intention to bring about injury to oneself. Cf. 85 O.S. § 11(A)(1). Denial of compensability under the facts of this case is mandated by

statute, notwithstanding the severity of claimant's injury.

¶ 6 The claimant appealed to a three-judge panel, which affirmed the order. The claimant seeks our review.

## II

¶ 7 The claimant contends no competent evidence supports the conclusion that he willfully failed to use a guard or protection against accident within the meaning of § 11(A)(2). We agree.

¶ 8 The question of "[w]hether or not the claimant willfully failed to use the protection against accident furnished for his use was a question of fact for determination by the State Industrial Commission, and the burden was upon the [employer] to show such a violation." *Wise–Buchanan Coal Co. v. Ray*, 157 Okla. 197, 199, 17 P.2d 360, 361 (1932). In *Wick v. Gunn*, 66 Okla. 316, 320, 169 P. 1087, 1090 (1917), the Oklahoma Supreme Court defined "willfulness" as the term is used in § 11(A)(2). The court declared:

> The willfulness contemplated amounts to more than a mere act of the will, and carries with it the idea of premeditation, obstinacy, and intentional wrongdoing. The burden is upon the employer to show that the failure of the claimant comes within the exception defined by statute. . . .

¶ 9 The employer cites the federal OSHA regulation in effect at the time of the claimant's accident, 29 C.F.R. § 1910.147, which states in relevant part:

(a)(2)(i) This standard applies to the control of energy during the servicing and/or maintenance of machines and equipment.

(a)(2)(ii) Normal production operations are not covered by this standard. . . . Servicing and/or maintenance which takes place during normal production operations is covered by this standard only if:

(a)(2)(ii)(A) An employee is required to remove or bypass a guard or other safety device, or

(a)(2)(ii)(B) An employee is required to place any part of his or her body into an area on a machine or piece of equipment

where work is actually performed upon the material being processed (point of operation) or where an associated danger zone exists during a machine operating cycle.

¶ 10 The trial court identified the mandatory lockout, tagout procedure as the "protection against accident" which the claimant disregarded. The trial court went on to define "willful" as "only the intention to do the act that fails to utilize the protection against accident. . . ." We find that definition cannot be reconciled with the definition dictated by the Oklahoma Supreme Court in Wick, i.e., "more than a mere act of the will, and carries with it the idea of premeditation, obstinacy, and intentional wrongdoing." No evidence was presented to indicate that the claimant approached the injury-causing agent with the intention of disregarding the lockout/tagout procedure and servicing or maintaining the rotary valve. He testified that if he had intended to come into contact with the valve, he would have followed the mandated procedure. However, his undisputed testimony was that he opened the access door to check for contamination inside the pipe downstream from the valve.

¶ 11 The question of whether a claimant acted willfully under § 11(A)(2), is a question of fact for the Workers' Compensation Court *when there is a conflict in the evidence*. See, e.g., *Wise–Buchanan Coal Co.*, 157 Okla. at 199, 17 P.2d at 361 ("[T]estimony was in conflict with the testimony of other witnesses. The determination of that conflict in the evidence was for the State Industrial Commission.")

¶ 12 In the matter before us, there is no conflict in the evidence. Certainly the claimant intended to insert his arm into the access door without locking and tagging out the nearby valve. He did so with no intention whatsoever of coming into contact with the valve. The claimant's disregard for his own safety was negligent, as well as dangerous. It was not, however, willful as the Oklahoma Supreme Court has defined the term in the context of the Workers' Compensation Act. The following observation of the Oklahoma Supreme Court is particularly instructive in this matter:

Contributory negligence and willful failure to use a safety appliance must not be confused. The mere voluntary failure to use the same would constitute contributory negligence and to hold that such failure in itself barred relief would, in effect, preserve a defense abrogated by the act.

*Wick,* 66 Okla. at 320, 169 P. at 1090.

### III

¶ 13 We find the employer failed to present evidence to refute the claimant's undisputed testimony, and therefore no conflict in the evidence exists for the trial court to resolve. We therefore hold the order under review is not supported by competent evidence and is erroneous as a matter of law. The order is vacated and the matter is remanded for further proceedings.

¶ 14 VACATED AND REMANDED FOR FURTHER PROCEEDINGS.

¶ 15 RAPP, J., and TAYLOR, J., concur.