## HAWES et al. v. WARREN et al.

### (Circuit Court, D. Maine. December 19, 1902.)

### No. 118.

**1. NEGLIGENCE—DAMAGE FROM FIRE.**

In an action for damages from fire, caused by the alleged negligence of defendants in installing an electric motor and appliances in plaintiffs' building, it is necessary for the plaintiffs to develop some theory as to how the fire was caused, and furnish proofs to support the theory.

**2. SAME—EVIDENCE—QUESTION FOR JURY.**

In this case the question of defendants' negligence was properly submitted to the jury, though plaintiffs' evidence in support of their theory as to how the fire was caused was weak.

**3. EVIDENCE—OPINION—GROUNDS.**

In stating opinions as to the value of a building destroyed by fire, witnesses should be required to state the grounds on which their estimates are based; otherwise the reliability of the estimates cannot be determined.

**4. EXCESSIVE VERDICT—DISPOSITION OF CAUSE.**

Though a verdict for excessive damages is usually to be regarded as indicating partiality or inconsiderateness necessitating a reversal, the court may allow such a verdict to stand, if the excess be remitted, where it is satisfied that the jury acted honestly, and that their error as to damages arose from lack of a full presentation of that issue.

A. F. Moulton, for plaintiffs.

George E. Bird and William M. Bradley, for defendants.

PUTNAM, Circuit Judge. This case was tried to the jury at this term, and a verdict in behalf of the plaintiffs was rendered against the defendants for $2,658.33. The declaration charges that the plaintiffs were owners of a building in Westbrook, and that the same was destroyed by fire by reason of the negligence of the defendants with reference to a certain electric motor, its wires, appliances, and connections, which the defendants had installed. The present matter for consideration is a motion of the defendants to set aside the verdict on general grounds, and also because the damages were excessive.

Mr. Quimby, referred to in the following extract from the charge to the jury, was the husband of one of the plaintiffs. Among other things, the court charged the jury as follows:

"In order that the plaintiffs may recover, they must satisfy you by a preponderance of the case: First, that the defendants were guilty of negligence; and, second, that the defendants' negligence caused the fire." "If they had no directions from Mr. Quimby as to what particular mechanism they should select, then their responsibility for the exercise of skill and good judgment begins at the beginning of the whole transaction, and relates to everything connected with it, including the condition of the starting box and the condition of the motor, whatever it was. There is no evidence—and I say this to you plainly, for I think you will so find—that Mr. Quimby was an expert in electrical appliances, and no evidence that he undertook to interfere with the defendants in what mechanism they should select, or how they should place it, or that he knew how to interfere. Therefore the case rested, so far as this particular is concerned, entirely upon the defendants to supply the req-

¶ 3. See Evidence, vol. 20, Cent. Dig. § 2303.

¶ 4. Reduction or increase of amount of recovery on appeal, see note to The Homer, 48 C. C. A. 470.

uisite and proper mechanism, and to place it and install it in a proper manner, with reasonable care and without negligence."

Of course, in carrying the burden of showing that the defendants were guilty of negligence, and that their negligence caused the fire, it was necessary for the plaintiffs to develop some theory as to the precise manner in which the fire was caused, involving pointing out the particular portions of the electrical plants which caused it, and furnishing proofs to support the theory. During the progress of the trial the presiding judge was very expectant that the plaintiffs would be compelled to rely on a general attack on various portions of the plant, and would fail in the particulars referred to, and that, therefore, the court might be compelled to direct a verdict for the defendants. Nevertheless, before the evidence was concluded, the plaintiffs developed a special theory of this nature, and some facts to support that theory, with reference to one of the starting boxes. There was enough of this to prevent the presiding judge from directing a verdict for the defendants, and this court still continues of the impression that such a verdict should not have been directed; and, of course, such impression continuing, even though the case in behalf of the plaintiffs were a feeble one, the verdict cannot be set aside for any reasons touching its substance. It should be added, however, that Railroad Co. v. Richardson, 91 U. S. 454, 23 L. Ed. 356, permits a very loose line of proof with reference to the origin of fires alleged to have been caused by defective mechanism; so that, except for the authority of that case, which bears directly on some phases of the suit now before us, the verdict would find so little support in the evidence produced as to require us to disregard it.

With reference to the matter of damages, however, we think the verdict was clearly an unsuitable one. The building was located in, or approximately to, the village of Saccarappa. It was a large wooden structure, erected for a shoe factory about 15 years before the fire. It was a failure for the purposes for which it was constructed, and for several years it had been occupied only incidentally, and the occupation at the time of its destruction by fire was not at all a profitable one. The loss was total. The only witnesses who testified as to its value in behalf of the two plaintiffs were their husbands, who were undoubtedly competent witnesses, and men of fair and honest appearance. The values at which they estimated the building were but a few hundred dollars in excess of the amount returned by the jury. The grounds on which they based their estimates were not very fully developed, either on their direct examination or cross-examination. Of course, in no event can the value of such estimates be determined without knowing exactly from what standpoint they are made. Unless thoroughly tested by examination and cross-examination, it may happen that a witness giving an estimate of that character is, unbeknown to the court and the jury, governed by his computation of the cost of reproducing the building; or it may be that he bases his estimate on what the building would be worth in the event, at some indefinite future period, it unexpectedly comes into full use. Of course, all values based too much on such considerations, or either of them, are delusive.

Moreover, notwithstanding our favorable comments on the witnesses, they were the husbands, respectively, of the two plaintiffs, so that their unsupported opinions could hardly be accepted in a court of justice. On the whole, the various matters to which we have called attention with reference to the value of this building could not have been properly weighed by the jury; and the jury naturally would not have the experience which the court has to enable them to weigh properly the various features, and estimate properly the class of testimony, to which we have referred, unless they had been especially cautioned by the court so to do, and the proofs had been elaborately commented on. There was no such elaboration; so that the result reached may well be assumed to have been one of misapprehension, without involving any reflection on the general capacity of the members of the jury as jurors, or their disposition to do justice.

It frequently occurs that judicial tribunals to which applications are made for the purpose of setting aside verdicts of juries are left in the position in which we are left; that is to say, they find sufficient evidence in the case to warrant the verdict on the main issue, but conclude that the damages are excessive. Under such circumstances the courts commonly allow the verdicts to stand if a proper portion of the damages is remitted, but, generally, this is not the true rule of procedure. Ordinarily, when a jury returns excessive damages, the conclusion resulting from that fact alone should be that the jury was governed by partiality, or has been inconsiderate; so that, therefore, the parties have not had for the determination of their rights the tribunal which the law of the land entitles them to. Partiality or inconsiderateness with reference to the damages awarded ordinarily taints the entire verdict, so that the whole should be disregarded. But in the case at bar, for the reasons we have stated, and for other reasons which we need not state, we are entirely satisfied that the jury proceeded honestly and considerately as to all matters to which their attention was carefully called. Therefore we feel ourselves justified in allowing the verdict to stand, provided the damages are remitted as we shall direct. Nevertheless, the whole case is in such extreme doubt that, if damages are not remitted, we feel that justice would be more likely to be promoted by giving parties a new trial of the whole case.

Ordered, unless the plaintiffs remit on or before the 31st day of January, 1903, all damages awarded by the verdict of the jury in excess of $1,400, the verdict will be set aside, and a new trial granted.