BOLEN-DARNALL COAL CO. vs WILLIAMS.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep. 867).

1. *Nature of Pleadings.*

    Pleadings are the exact statements of the cause for which plaintiff asks relief also the affirmative or negative denial by the defendant.

2. *Pleading—Demurrer.*

    If a complaint for injury fails to give cause for the injury a demurrer

is proper and not a motion to make complaint more explicit and certain.

3. *Master and Servant—Injury to Servant.*

In an action brought against a coal mining company because of injury to a miner by an explosion, the complaint, though with repetitions, gave a clear and concise statement of the cause of action as required by Carter's Ind. Ter. Ann. St. 1899, § 3231.

4. *Same—Evidence.*

In a case brought against a mining company because of personal injury to a miner due to an explosion, he could simply say that the flame by which he was burned "seemed to come right up the slope."

5. *Same—Qualification of Witness.*

A miner having eleven years experience, and having worked in one particular mine for eighteen months is qualified to testify as to the capabilities of a sprinkling machine which was used to keep the explosive dust down.

6. *Same—Risk.*

By the Act Cong. July 1, 1902, c. 1356, 32 Stat. 631, mine operators in the Indian Territory are required to guard their employes from injuries through dust, bad air, explosives, etc. Therefore an operator is estopped from pleading contributory negligence or assumption of risk in a suit for injury which was caused by noncompliance of the operator with the act.

7. *Same—Negligence.*

It is improper to charge contributory negligence, where it is not stated that the burden of such proof falls on the defendant.

8. *Appeal—Damages.*

A verdict allowing excessive damages will be undisturbed, unless so extreme as to show prejudice.

9. *Same.*

A minor who was negligently burned in an explosion could recover for permanent disability and inability to earn a living and also for the pain and suffering and for being handicuffed the rest of his life by distorted face and body.

Appeal from the United States Court for the Central District of the Indian Territory; before Justice T. C. Humphrey, November 1, 1905.

Personal injury action by Walter Williams against the Bolen-Darnall Coal Company. From a judgment for plaintiff, defendant appeals. Affirmed.

*S. Guerrier*, for appellant.

*Harley & Lewis*, for appellee.

LAWRENCE, J. December 8, 1903, appellee was a coal miner by occupation, and mining coal for appellant in its mine near South McAlester. At 3 o'clock in the morning, while in the act of leaving his work, on his way homeward, going through the entry leading out of the mine, he was thrown with great force forward and down to the ground, and the mine and entry were immediately filled with blazing gas. For protection therefrom he lay flat, with his face upon the floor of the entry. He was severely burned about his face, neck, ears, hands, and wrists, from which he suffered great pain for a number of weeks. The burning resulted in the drawing up of his fingers and hands, permanently to prevent him from performing any manual labor therewith. The top of one ear was burned off, and the other ear was burned. His nose was badly burned, and likewise his face and neck, whereby he was permanently injured and deprived of thereafter following his business of coal mining, or any other than the lightest sort of manual labor. He brought his action to recover damages for these injuries, and asked judgment for $25,000. The cause was tried to a jury, which returned a verdict in favor of appellee for $12,500. Judgment was rendered thereon. Appeal was prayed and granted therefrom, and is now before us for review.

Appellant complains of 27 specific errors committed by the trial court. The first 4 are the usual and formal assignments made in the motion for new trial; the fifth, overruling motion for an order requiring plaintiff to reform his complaint by reducing the eight paragraphs to one, "in ordinary and concise language, without repetition of the facts constituting plaintiff's cause of action;" sixth, the overruling of the motion for an order

that plaintiff make his complaint more definite and certain, by
stating the point in the mine at which the alleged explosion
issued and the proximate cause of the injury; seventh, the
overruling of motion for an order requiring plaintiff to elect as to
whether the alleged injuries were the result of defendant's
negligence in permitting dry and inflammable coal dust to
accumulate, or in allowing explosive gas, in dangerous amount,
to accumulate in the mine; eighth, the overruling of defendant's
motion for new trial because of absence of witnesses; the ninth
is embraced in the sixth assignment; tenth, in permitting the
plaintiff, Walter Williams, to testify that the flame which
burned him "seemed to come right up 'the slope;" eleventh,
permitting witness Vaught to give expert evidence as to the
capability of a machine by which the watering of the mine was
done; twelfth, permitting said Vaught to testify, to the best of
his belief, the direction of the wind of the explosion; thirteenth,
the asking of a witness "whether the soot would have been on
the track if the explosion had not come over there;" fourteenth,
the refusal of the court to instruct the jury to return a verdict
for defendant; the fifteenth to the eighteenth, inclusive, relate
to the instructions given the jury by the court; the nineteenth
to the twenty-sixth, inclusive, relate to the refusal of the court
to give instructions asked by the defendant; and the twenty-
seventh, the denial of the motion for new trial. It is wholly
unnecessary, in the disposal of this case, to take up the assign-
ments of error severally, as they may be grouped into those
which relate to the alleged defects in the pleading, the motion
for continuance, the rulings of the court upon the admission
and exclusion of evidence, the giving of instructions to the jury
and refusing to instruct it, and the alleged excessive damages
given by the jury and confirmed by the court's judgment
thereon:

The criticism of the complaint by appellant, and its
strenuous effort, by divers motions, to have it conform to its

views of correct pleading, is not without ground. The general
principles of pleading must necessarily be the same under
every rational system of jurisprudence. They are the precise
statements of the cause for the relief asked by the plaintiff on
the one side, and the like denial, either negative or affirmative,
of such cause by the other side, and they must be sufficient, in
the absence of such denial, to entitle the plaintiff to the relief
asked, without evidence in their support. Under the rule of
common-law pleading they were required to be in proper and
legal form. Hale, in his History of the Common Law, says:
"It is admirably calculated for analyzing a cause, and extracting,
like the roots of an equation, the true points in dispute, and
referring them, with all imaginable simplicity, to the court or
jury." Sir William Jones, the scholar, philosopher, and lawyer,
observed that "our rules of special pleading are founded on
exquisite logic." The great Lord Mansfield declared that
"the substantial rules of pleading are founded in strong sense,
and in the strongest and closest logic, and so appear, when well
understood and explained, though, by being misunderstood
and misapplied, they are often made use of as instruments of
chicane." 1 Burrows, 319. These expressions of opinion as to
correct pleading are as applicable in this jurisdiction as they
were a century and a half ago under the common law. Our
statute provides that "the pleadings are the written statements,
by the parties, of the facts constituting their respective claims
and defenses. *    *    * The complaint must contain
a statement, in ordinary and concise language, without repetition
of the facts constituting the plaintiff's cause of action. *    *    *
Where the complaint contains more than one cause of action,
each shall be distinctly stated in a separate paragraph and
numbered." Sections 3225, 3231, 3233, Carter's Ind. Ter.
Ann. St. 1899. The complaint in question contained eight so-
called paragraphs, and were so named and numbered by the
plaintiff, when it is manifest that the statements therein con-

ained are mere parts of one cause of action—the alleged negligence of the defendant in the operation of its mine, which caused plaintiff to receive the injuries of which he complains. However, this was a mere error as to form, and the court could properly have sustained defendant's motion to reform his complaint; but its refusal was not more than harmless error. If the entire complaint stated a cause of action, in language and construction that one of ordinary intelligence would be able to understand, it would not be fatally defective.

The refusal of the court to require the complaint to be made more definite and certain, by stating the point in defendant's mine at which the explosion originated and the proximate cause of the injury, presents a more serious question. However, upon the argument made by appellant as to this sixth assignment of error, a demurrer was the proper mode of attack upon this alleged defect in the pleading. If he is correct that the complaint must specifically set forth a state of facts showing the proximate cause, for the reason that there cannot be a recovery in the absence of the allegation of acts of negligence upon the part of defendant that clearly show they were the proximate cause of the injury, and if the case be one that it cannot be certainly known, "then it is necessary that the complaint develop some theory as to how the fire was caused and furnish proof to support that theory"—citing Hawes vs Warren (C. C.) 119 Fed. 978. Conceding that the view of appellant, supported by the authority cited, is correct, does not the complaint state facts sufficient to show, prima facie, that the injury was caused by an explosion of gas, and, further, that such explosion, prima facie, in a coal mine, in view of the statute and, in fact, from common knowledge, was the result of negligence on part of the mine owner and operator, and therefore, necessarily, the proximate cause of the injury?

The complaint states: "That while plaintiff was in his regular course of employment a terrific explosion occurred in

said mine, and poisonous gas, smoke, coal dust, and fire rushed up the slope of said mine, reaching the point where plaintiff was, on the main slope in said mine, at a point between the seventh east entry and the sixth east entry in said mine, and on the main slope, seriously and permanently burning and otherwise injuring plaintiff. That plaintiff does not know at what point on the main slope in said mine said explosion first began and occurred, but plaintiff alleges that the explosion was of both coal dust and standing gas that defendant had carelessly and negligently permitted to accumulate on the said slope and in the working places in the said mine. Plaintiff says that he is unable to state how the said coal dust or gas, or either or both of them, first became ignited, causing the said explosion. * . * * That said mine was being operated at a depth of more than 100 feet beneath the surface, and that defendant carelessly and negligently permitted poisonous, noxious, and inflammable gas to collect and stand at the working places in said mine in great and dangerous quantities, and especially in the said air course. That it negligently and carelessly allowed great quantities of inflammable coal dust to accumulate on the main slope in said entry, and the seventh east entry, and at and near the face of the main slope, which said coal dust became ignited, in some manner to the plaintiff unknown, causing plaintiff to receive the said injuries. That defendant carelessly and negligently failed to remove the inflammable coal dust that it had permitted to accumulate on said main slope, in the seventh east entry, at the face of the main slope, or to properly dampen or wet the same; so as to make it safe, and to prevent explosion. That it allowed, carelessly and negligently, a large body of gas to accumulate and stand in the seventh east air course, the said quantity being dangerous, and carelessly and negligently failed to provide, by means of battice or other proper appliance, a means of forcing a sufficient quantity of fresh, pure air, so as to dilute, render

harmless, and expel therefrom the inflammable gas it had thus permitted to accumulate. That defendant knew, or by use of reasonable and ordinary care might have known, that a large quantity of inflammable and explosive gas had accumulated in the seventh east air course, and further knew, or might have known by use of ordinary and reasonable care, that a large and dangerous quantity of inflammable coal dust had accumulated at the face and along the main slope of said mine. That defendant carelessly and negligently failed, by the use of proper machinery and appliances, and by a proper system and method of conducting pure air, to force enough of it to the face of each working place therein as to expel therefrom, dilute, and make harmless the said poisonous, noxious, and inflammable gas therein accumulated as aforesaid. That by reason of said acts of carelessness and negligence on part of defendant, and without fault on part of plaintiff, the said coal dust became ignited at some point along said slope, to said plaintiff unknown, a large sheet of flame, followed by after damp and other poisonous fumes, swept over and upon the place aforesaid where plaintiff was, seriously and permanently injuring him, almost suffocating him, by means whereof he was seriously and permanently burned about the face, ears, neck, head, arms, and body, and the top of his left ear was burned off," etc.

It will be observed that by the above concluding clause of the statement and charging part of the complaint the language is used: "That by reason of said acts, and without fault on part of plaintiff, the said coal dust became ignited,    *    *    * whereby he became and was injured," etc.; which disposes of the entire argument of appellant as to the failure to allege a proximate cause, and is in harmony with the case of Matz vs Chicago & A. Ry. Co. (C. C.) 88 Fed. 772, which he cites and quotes, as follows: "It is observable that the petition does not allege in its conclusion that the injury or death of the party resulted from all the causes of negligence combined, co-acting

to produce a common result. But it alleges 'that by reason of said negligence,' but by which of them, or whether all of them combined, is not stated." While this complaint may be subject to the technical objection of repetition, yet, taken as a whole, it makes a clear, connected, concise, and legal statement of a single cause of action, and complies with the requirement of the statute above quoted. It would not be vulnerable to general demurrer, and likewise, upon default for want of an answer, would have entitled the plaintiff below to a judgment upon damages to be assessed by a jury. There is no prejudicial error in overruling the motion to make complaint more definite and certain.

The seventh assignment is embraced in the sixth assignment of errors, and what we have above said applies to it; it being a matter of pleading.

The eighth assignment is wholly without merit, being a complaint of the action of the court in overruling appellant's motion for continuance because of the absence of alleged material witnesses, Watkins and Worthen. These persons were not subpoenaed, but plaintiff relied upon their appearance. No reason was shown why their presence could not have been secured by subpoena, and, if present, what they would testify to, or if they could be obtained at a subsequent term of the court, and whether or not the same facts sought to be proved by them could be proved by others.

The ninth assignment of error is determined in the consideration of the sixth assignment.

The tenth assignment is frivolous, being an objection to the testimony of the appellee stating when testifying, that "the flame which burned him seemed to come right up the slope."

The eleventh assignment, to the permission by the court for the witness Vaught to give expert testimony as to the capabilities of the machine by which the watering of the mine was done, is not well taken, for the reason that his testimony

shows that he is a coal miner of 11 years' experience, and had worked in this mine 18 months, and presumptively should know whether a sprinkling machine to keep down dust therein was of sufficient capacity to do it. Furthermore, the witness stated that he saw the machine in operation, and described minutely how it did the watering; hence the jury had the facts, with his opinion, which removed the vice of the testimony, if any existed.

The same answer can be made to the twelfth assignment of error as to the expert testimony of same witness (Vaught) as to his opinion of the direction of the wind produced by the explosion—manifestly immediately in front of the explosive force.

The thirteenth assignment of error is in the same line with the three preceding, being to the action of the court in asking the witness "if the soot would have been on the track if the explosion had not come over there."

The second, third, and fourth assignments are passed by appellant without argument, and are the stereotype form as to the verdict being contrary to the evidence, not sustained by the evidence, and contrary to the law.

The fourteenth assignment of error is the refusal of the court to instruct the jury to return a verdict for defendant because of failure of proof of proximate cause, that the proximate cause of the injuries was due to defendant's negligence, and that it appeared from the evidence that plaintiff was fully informed of the conditions under which he worked, and he thereby assumed the risk. An act of Congress entitled "An act to amend an act entitled 'An act for the protection of the lives of the miners in the Indian Territory,'" approved July 1, 1902 (32 Stat. 631, c. 1356), provides in positive terms that "the owners and managers of every coal mine shall furnish their miners with pure air, which shall be forced through such mine by proper machinery to the face of every working place, so as to

43

dilute and render harmless, and expel therefrom the noxious
or poisonous gases, and wherever practicable, the entries, rooms
and all openings shall be kept well dampened with water to
cause the coal dust to settle, and when not so practicable for this
purpose, accumulation of dust shall be taken out of the mine."
It further provides that a violation of this act shall constitute a
misdemeanor, and any person convicted shall pay a fine of
$500.    In view of this statute, the appellant is not in a favorable
situation to raise the question of assumed risk or contributory
negligence on part of the injured person.    Under a similar
statute in Illinois, providing that the mouths of all mine shafts
shall be protected by specifically described gates, it was held,
in Catlett et al vs Young, 143 Ill. 74, 32 N. E. 447, that it was
no defense to a failure to furnish such protection to the miner
that the miner carelessly and negligently fell down the shaft,
for the reason that the act was expressly for the protection of
the miner, and therefore the doctrine of contributory negligence
and assumed risk did not apply.

The court did not err in refusing appellant's instructions,
complained of in his twenty-second, twenty-third and twenty-
fourth assignments of-error, for the reason above given by us in
regard to the fourteenth assignment, and sustained by the
Illinois Supreme Court decision cited.    A further reason may
be given that the instructions are defective in omitting to state
that the burthen of proving contributory negligence, when
alleged as a defense, which was done in this case, is upon the
defendant.    See Ireland & Seaboard Coasting Co. vs Tolson,
139 U. S. 557, 11 Sup. Ct. 653, 35 L. Ed. 270.    A careful exami-
nation of the charge given by the court to the jury satisfies
us that under the rigid provisions of the act of Congress, re-
quiring the utmost care upon the part of mine owners and
operators of mines to guard their employes in the mines from
injuries because of dust, bad air, gas, and explosions, and fixing
severe penalties for failure of such requirements, it was most

favorable to the appellant. If the law be as we have herein indicated, under this act of Congress, upon the matters therein expressed, then the questions of contributory negligence and assumed risk are eliminated. The act is for the protection of the lives of miners in the Indian Territory, and, in order to make it effective, it expressly provides that all mine owners and operators shall provide, under a severe penalty, certain well-defined means for protection, and this necessarily estops the owner and operator from interposing the defense of contributory negligence and assumed risk.

The only questions for the consideration of the jury were whether or not the appellant had complied with the terms of the statute, and, if not, then the measure of plaintiff's damages. They are questions of fact to be determined by the jury. Our attention has not been called, in argument of counsel, to any special disregard by the jury of the evidence thereon. The rule is familiar that the one who alleges error by the trial court has the burthen of establishing it in the court of review. The appellant has failed to bring his appeal within the application of that rule which shows the jury was unwarranted in finding a verdict upon the first above question of fact as to the failure of appellant to operate its mine within the provisions of the statute.

The only other error which we deem necessary to consider is the first one—"that excessive damages appear to have been given under the influence of passion or prejudice." At first blush, this error would seem to be well taken. Twelve and a half thousand dollars for the personal injury suffered by this appellee is a fortune to one in his station in life. The annual lowest rate of interest upon it would exceed, in all probability, what he could earn at $3 per day at his work as a coal miner, annually, during the rest of his natural life. He is not totally disabled from earning something toward a livelihood. He is furnished an amount of capital, the production of which will

yield him for life an income that would be greater thân could be realized by him, under the most reasonably favorable circumstances, from his labor as a coal miner. Under the law, only compensatory damages can be allowed in cases of this sort. Had the case been tried by the court, it is highly probable the finding of damages would have been less. But under the law the allowance of damages must be left to the judgment of 12 men. The uniform rule governing the court in regard to a finding thus made is that the verdict will not be disturbed upon the sole ground of being excessive, but it must be so excessive as convinces the mind of the court that it could only have been the result of passion or prejudice of the jury. There is not a thing on the face of this record calculated to arouse such prejudice or passion. The appellant was given a fair trial in every particular, as expressed in the foregoing opinion, after a painstaking reading and consideration of it. The Supreme Court of the United States, in the case of The City of Panama vs John S. Phelps, 101 U. S. 453, 25 L. Ed. 1061, says: "Damages in such a case must depend very much upon the facts and circumstances proved at the trial. When suit is brought by parties for personal injuries, there cannot be any fixed measure of compensation for the pain and anguish of body and mind, nor for the permanent injury for health and constitution; but the result must be left to turn mainly upon the good sense and deliberate judgment of the tribunal set by law to ascertain what is a just compensation for the injuries inflicted." The appellee was not only entitled to recover for his permanent disability and inability to make a living, but the jury, under the law and the instructions given, that in estimating the damages he should recover for the pain and suffering he endured, and the humiliation and embarrassment of being handicapped through life by the distorted and disfigured features and body, produced by the willful negligence of appellant, so found by its verdict. Therefore we cannot say that the ground alleged

for a reversal in the first assignment should be sustained.

The judgment is affirmed.

GILL, C. J., and TOWNSEND, J., concur.  CLAYTON, J., not participating.